## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANS, INC. and VF OUTDOOR, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MSCHF PRODUCT STUDIO, INC.,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>**(1) Trademark Infringement in Violation of 15 U.S.C. § 1114 and Common Law**<br><br>**(2) False Designation of Origin and Unfair Competition in Violation of 15 U.S.C. § 1125(a), New York Law, and Common Law**<br><br>**(3) Trademark Dilution in Violation of 15 U.S.C. § 1125(c) and New York Law**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Vans, Inc. and VF Outdoor, LLC (collectively, "Vans"), through the undersigned counsel, bring this Complaint against Defendant MSCHF Product Studio Inc. ("MSCHF") and allege as follows:

### INTRODUCTION

1.      Vans is a world-famous footwear and apparel company that was founded in Southern California. Operating on a "shoestring" budget, in 1966 a group of friends and partners, including brothers Paul Van Doren and Jim Van Doren, founded The Van Doren Rubber Company to manufacture shoes and sell them directly to the public. In the over 55 years since, Vans has become an iconic brand, known for its original, authentic, and distinctive shoes that embody Southern California counterculture.

2.      One of Vans' core products is its OLD SKOOL shoe. Since first creating these shoes over 40 years ago, Vans has worked continuously and tirelessly to develop this shoe line

into its now-iconic status through the investment of enormous amounts of time, effort, and resources.



*Vans' OLD SKOOL Shoes*

3.      Despite early years of uncertainty, Vans' efforts paid off. Over four decades later, the OLD SKOOL is one of the most popular shoe styles in the world. Vans sells millions of units of its OLD SKOOL shoes each year. To consumers, the OLD SKOOL shoes are instantly recognizable and associated with Vans and its considerable goodwill.

4.      Vans has also developed substantial goodwill and consumer recognition in the Vans name, the Vans logos, and Vans trade dress, such as the following representative examples.



5.      Seeing Vans' distinctive trademarks and trade dress lets consumers know that the shoes come from Vans and instantly conveys Vans' reputation for authenticity, quality, and creative expression.

6.      MSCHF is well aware of Vans' trademarks and trade dress rights, including their tremendous value. Indeed, immediately upon learning of MSCHF's involvement in this matter, Vans sent a cease and desist letter to MSCHF via its counsel on April 6, 2022.

7.      In spite of, or perhaps due to, Defendant's knowledge of Vans' rights and the substantial value of the Vans trademarks and trade dress, MSCHF recently embarked on a campaign to piggy-back on Vans' rights and the goodwill it has developed in its iconic shoes. Specifically, on information and belief, MSCHF and Michael Stevenson (who uses the stage name "Tyga") have collaborated to design, develop, advertise, offer to sell, and sell the MSCHF Wavy Baby shoe. MSCHF, in collaboration with Mr. Stevenson, has shamelessly marketed the Wavy Baby shoe in a direct effort to confuse consumers, unlawfully siphon sales from Vans, and intentionally damage Vans' valuable intellectual property rights.

8.      The Wavy Baby shoe blatantly and unmistakably incorporates Vans' iconic trademarks and trade dress. For comparison, representative examples of Vans' OLD SKOOL shoes and the Wavy Baby shoe are depicted below.



| VANS SHOES AND PROTECTED IP | WAVY BABY SHOES |
|---|---|
| *Vans OLD SKOOL Shoes* | *MSCHF Wavy Baby Shoe* |



| **VANS SHOES AND PROTECTED IP** | **WAVY BABY SHOES** |
| --- | --- |
| *Vans OLD SKOOL Shoes* | *MSCHF Wavy Baby Shoes* |
| *Vans OLD SKOOL Footbed Logo* | *MSCHF Wavy Baby Footbed Logo* |

9.      MSCHF also has blatantly and unmistakably copied Vans' trademarks and trade dress in connection with advertising and product packaging for the Wavy Baby shoe. Exemplary

comparisons of Vans' trademarks and trade dress and Defendant's copycat advertising and product packaging are depicted below.



| VANS TRADEMARKS AND TRADE DRESS | WAVY BABY ADVERTISING / PACKAGING |
|---|---|
| *Vans' Stylized Word Mark* | *Defendant's Infringing Stylized "Wavy" Mark* |
| *Vans Shoe Box Trade Dress* | *Wavy Baby Shoe Box* |

10.   Even the name of the shoe—Wavy Baby—is an unmistakable attempt by MSCHF to freeride on the goodwill Vans has earned through the iconic, wave-like Side Stripe Mark and the WAYVEE mark that Vans has used since at least as early as August 2021 and that is the subject of Vans' trademark application (Serial Number 97040210).

11.   MSCHF's copying of Vans' shoes is not subtle or inadvertent; rather, MSCHF, in collaboration with Mr. Stevenson, is aggressively marketing and intends to begin selling this

blatant knockoff version of Vans shoes in just a few days, on April 18, 2022, while willfully infringing Vans' trademark and trade dress rights. This is reflected on, for example, the MSCHF website, which states that the Wavy Baby shoe "drops Apr 18" and includes a countdown timer showing the remaining days, hours, minutes, and seconds before the launch.



([https://mschfsneakers.com/wavy-baby](https://mschfsneakers.com/wavy-baby))

12.     MSCHF and Mr. Stevenson promote this knockoff shoe through the MSCHF website ([https://mschfsneakers.com/wavy-baby](https://mschfsneakers.com/wavy-baby)), the MSCHF Sneaker app, on popular social media platforms, in the widely-circulated music video for the song *Freaky Deaky* with Doja Cat, and elsewhere.

13.     After discovering the misappropriation in connection with the Wavy Baby shoe, Vans placed both Mr. Stevenson and Defendant MSCHF on unequivocal notice of the infringing nature of the Wavy Baby shoe on April 5 and 6, 2022, respectively. Despite Vans' cease and desist

letters, MSCHF defiantly pressed forward, continuing to aggressively market the Wavy Baby shoe and maintaining the quickly-approaching release date of April 18, 2022.

14.     MSCHF's existing and planned use of Vans' trademarks and trade dress confirms that MSCHF is willfully infringing Vans' rights, and will not cease infringing unless ordered to do so. Vans has been left with no choice but to file this lawsuit to stop MSCHF's infringement and to recover damages for MSCHF's unlawful activities.

## THE PARTIES

15.     Plaintiff Vans, Inc. is a corporation organized under the laws of the State of Delaware, having its principal place of business at 1588 South Coast Drive, Costa Mesa, California 92626.

16.     Plaintiff VF Outdoor, LLC is a limited liability company organized under the laws of Delaware, having its principal place of business at 1551 Wewatta Street, Denver, Colorado, 80202.

17.     On information and belief, Defendant MSCHF Product Studio Inc. is a Delaware corporation with a principal place of business in Brooklyn, New York, and can be served through its registered agent, Legalinc. Corporate Services Inc., 651 North Broad Street, Suite 201, Middletown, Delaware 19709.

## JURISDICTION AND VENUE

18.     This is a civil action seeking disgorgement of profits, injunctive relief, and corrective advertising under federal and New York law based upon Defendant's willful acts of trademark and trade dress infringement, false designation of origin, and unfair competition.

19.     This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(b).

20.     This Court has jurisdiction over the pendant state law claims pursuant to 28 U.S.C.
§ 1367(a) because the state law claims claims are based upon the same or substantially the same
conduct by Defendant.

21.     This Court has personal jurisdiction over MSCHF because it is engaged in
substantial and regular business in the State of New York and in the Eastern District of New York,
including by manufacturing, marketing, and offering for sale its goods in this District, and selling
goods and services through its website, mobile application, and Brooklyn, New York studio, and
has committed acts of infringement at issue in this Complaint in this District.

22.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and
1391(b)(2) because MSCHF resides in this District and because a substantial part of the events
giving rise to the claims asserted in this Complaint occurred in this District and because a
substantial part of the property that is the subject of this Complaint is situated in this District.

## FACTUAL BACKGROUND

## I.      VANS AND ITS BUSINESS

23.     Vans is an industry-leading shoe and apparel company, which is known for its
original, authentic, and distinctive footwear and apparel that embody Southern California
counterculture.

24.     In March 1966, brothers Paul Van Doren and James Van Doren, along with friends
and business partners Gordon C. Lee and Serge Delia, founded Vans under the name "The Van
Doren Rubber Company." Their goal was to manufacture distinctive shoes and sell them directly
to the public. To start out, they built a factory in Anaheim, California and a retail store that was a
mere 400 square feet.

25.     Vans eventually grew into one of the most popular and well-known footwear
companies in the United States. Vans' iconic trademarks and distinctive trade dresses have been

consistently used for decades and instantly convey Vans' reputation for authenticity, quality, and creative expression. Throughout the lifetime of the company, billions of shoes with Vans' distinctive trademarks and trade dress rights have been sold in the United States.

26.     Vans' products have amassed significant goodwill and are continuing to grow in popularity. Over the past half century, Vans' shoes have been worn and popularized by a wide variety of athletes, musicians, artists, and other celebrities, from skateboarding legends such as Stacy Peralta, Tony Alva, and Jerry Valdez in the 1970s to music legends, athletes, and entertainers such as Kanye West, Common, Rihanna, Justin Bieber, Frank Ocean, Pharrell, A$AP Rocky, Harry Styles, Kylie Jenner, and Russell Westbrook in the present day. For example, a recent article in *Esquire* recognized Vans' significant popularity among celebrities while including the below photo collage:[1]



SHUTTERSTOCK, SPLASH

27.     Even Mr. Stevenson himself has been seen wearing Vans' OLD SKOOL shoes.[2]

---

[1]     https://www.esquire.com/style/mens-fashion/a13446025/vans-shoes/

[2]     https://www.dailymail.co.uk/tvshowbiz/article-4244028/Kylie-Jenner-plays-stepmom-King-Cairo-Tyga.html



28.     Vans' shoes are now some of the most popular shoes in the United States. For the past several years, an independent third-party survey called "*Taking Stock with Teens*" has consistently found that Vans is the No. 2 overall favorite footwear brand among U.S. teens.[3] According to the survey, Vans trails only Nike in popularity among U.S. teens.[4] These rankings have been recognized in publications such as *CNBC*, *Vogue*, *Bloomberg*, *Forbes*, *Footwear News*, and *Business Insider*, to name a few.

29.     Due to high demand for its shoes, Vans distributes its iconic footwear through a variety of channels. For the past few years, Vans has emphasized meeting customers where they are through digital sales, primarily on Vans' website (https://www.vans.com). Vans also distributes footwear through major department stores and retailers such as Nordstrom, Journeys, Tillys, Urban Outfitters, PacSun, and Famous Footwear; sporting goods and outdoor retailers like Foot Locker and Dick's Sporting Goods; online retail outlets like Zappos.com; and through Vans'

---

[3]     Piper Sandler Investment Research, Taking Stock With Teens Survey - Fall 2020, http://www.pipersandler.com/private/pdf/TSWTs_Fall_2020_Full_Report.pdf.

[4]     https://www.businessinsider.com/vans-shoes-popular-with-teens-2018-7

own retail stores, including the 450+ Vans retail stores throughout the United States. Vans' products are sold throughout the United States and across the world.

30.     In addition to its popularity among consumers, Vans has earned substantial recognition and praise within the footwear industry. By way of example only, Vans won the prestigious "Brand of the Year" award in 2014 from *Footwear News*, which hosts an annual ceremony often referred to as "The Shoe Oscars." In giving Vans the award, *Footwear News* recognized that Vans has "a lot of experience influencing youth culture with its iconic products and marketing"[5] and that "Vans has rolled far beyond its skater roots to achieve superstar status — a textbook case of taking your authenticity to the masses."[6] *Footwear News* also previously named Vans as the footwear industry's "Marketer of the Year" in 1998, "Company of the Year" in 2000, and "Brand of the Year" in 2006.[7]

31.     Vans' widespread popularity is reflected in its sales and revenue. In November 2011, Vans surpassed $1 billion in annual global sales for the first time in its history, while becoming the largest single action sports brand in the world and the first company rooted in skateboarding to achieve this level of success. By 2014, Vans' annual global sales surpassed $2 billion.

32.     Vans' enduring success has been driven by factors such as its focus on just a few iconic shoe lines, its reputation for creating lasting and durable footwear without sacrificing style, and its longstanding and consistent use of its trademarks and trade dress. In particular, Vans' consistent use of its distinctive trademarks and trade dress described herein—rights that Vans has

---

[5]     https://footwearnews.com/2014/focus/athletic-outdoor/fnaa-2014-brand-of-the-year-vans-319/

[6]     https://footwearnews.com/2014/focus/opinion-analysis/fnaa-winners-2014-2591/

[7]     https://footwearnews.com/2020/influencers/power-players/footwear-news-achievement-awards-fnaa-past-winners-1203069635/

built up methodically for nearly half a century—drives much of the company's popularity and success.

## II.     VANS' OLD SKOOL TRADE DRESS

33.     Central to this lawsuit is Vans' OLD SKOOL shoe. The OLD SKOOL shoe is an iconic low-top skate shoe that Vans first introduced to the market in the 1970s. Debuting under the name "Style 36," the OLD SKOOL shoe was one of the first Vans shoes to feature the Side Stripe Mark and later became one of Vans' bestselling shoes of all time.

34.     Vans' "OLD SKOOL Trade Dress" consists of a distinctive combination of source-identifying elements, including: (1) the Vans Side Stripe Mark on the shoe upper; (2) a rubberized sidewall with a consistent height around the perimeter of the shoe; (3) the uppermost portion of the sidewall having a three-tiered or grooved appearance; (4) a textured toe box outer around the front of the sidewall; (5) visible stitching, including where the eyestay meets the vamp; and (6) the placement and proportion of these elements in relation to one another.



*Vans OLD SKOOL Shoes*

35.     Since first introducing the OLD SKOOL in the 1970s, Vans has continuously manufactured, sold, and promoted shoes bearing the OLD SKOOL Trade Dress.

36.     The combination of elements comprising the OLD SKOOL Trade Dress serves no function other than as a signifier of the Vans brand. The OLD SKOOL Trade Dress is not essential to the use or purpose of the shoe, it does not reduce the cost or improve performance of the shoe, and its use by Vans does not put competitors at any significant non-reputation-related disadvantage. Competitors have available a multitude of alternative shoe designs they could use.

37.     Since first introducing the OLD SKOOL shoe, Vans has manufactured, sold, and promoted well over 1,000 colorways within the OLD SKOOL shoe line. Some of Vans' OLD SKOOL colorways come in the form of collaborations with other designers, companies, or celebrities. For example, Vans has released OLD SKOOL colorways through high profile collaborations with Marc Jacobs, Tyler the Creator/Golf Wang, Supreme, Stussy, Kenzo, JJJJound, Taka Hayashi, The North Face, and Disney. These collaborations and limited-run releases have given Vans' OLD SKOOL shoes a coveted level of prestige and helped further increase popularity of the shoes with new generations and demographics. A small fraction of the colorways that bear the OLD SKOOL Trade Dress are depicted below:



38.     Vans also offers consumers the opportunity to become their own collaborators through "Vans Customs," a platform on Vans' website (https://www.vans.com/customs). Through this platform, consumers can design their own colorway while utilizing the OLD SKOOL Trade Dress.



*Vans Customs Platform*

39.     Vans launched Vans Customs on its website in 2004, but in fact Vans has been selling customized OLD SKOOL shoes since its early days, well before the advent of the Internet. Through customization, Vans has allowed consumers to create new colorways of the OLD SKOOL shoe, with numerous color and material options, while at the same time strictly maintaining the OLD SKOOL Trade Dress and ensuring the high quality that consumers have come to expect from Vans products.

40.     Due to Vans' significant investments and efforts, in the United States alone, Vans has sold hundreds of millions of shoes that incorporate the OLD SKOOL Trade Dress. Vans' U.S. sales of footwear bearing the OLD SKOOL Trade Dress have generated several billions of dollars in revenue.

41.     Over the years, Vans has spent millions of dollars promoting the OLD SKOOL Trade Dress. Vans advertises and promotes footwear bearing the OLD SKOOL Trade Dress

through a wide variety of traditional and non-traditional means, including print, television, and internet advertising, event sponsorship, and athlete endorsement, to name a few.

42.    An advertisement published in 1994 for Vans shoes bearing the OLD SKOOL Trade Dress is reproduced below:



43.    Over 40 years since the introduction of the OLD SKOOL shoe, the OLD SKOOL Trade Dress remains immensely popular and continues to grow in popularity. A 2018 article in *W Magazine* named the OLD SKOOL as the "most popular shoe of the summer."[8] Meanwhile, *GQ* remarked that the OLD SKOOL shoe had become "the go-to shoe for members of every fashion

---

[8]    https://www.wmagazine.com/story/old-skool-vans-popular-sneaker-trend-2018

tribe."[9] And an article in *Business Insider* observed that the OLD SKOOL shoe was "blowing up the fashion world" and had "surpassed its humble roots to become an icon in its own right."[10] Copies of these articles and others are attached collectively as **Exhibit 1**.

44.     The OLD SKOOL shoe is one of the most sought-after sneakers in the world. In 2017, online fashion sales website Lyst found that the OLD SKOOL shoe was the No. 4 most searched sneaker in the world.[11] Meanwhile, according to a 2019 research study by SEMrush, the Vans OLD SKOOL shoe was the No. 3 most popular sneaker search on Google in the United States within the previous 12 months.[12]

45.     Over the years, shoes bearing Vans' OLD SKOOL Trade Dress have been worn and popularized by countless athletes, pop stars, rappers, artists, and other influential celebrities, including Frank Ocean, Justin Bieber, Kanye, A$AP Rocky, Tyler the Creator, Russell Westbrook, Julia Roberts, Paul Walker, Gwen Stefani, Miguel, Olivia Wilde, Kylie Jenner, and Kristen Stewart.

46.     In addition, Vans' OLD SKOOL Trade Dress has appeared in a variety of television shows and movies. By way of example only, Vin Diesel wore OLD SKOOL shoes as Xander Cage in the 2002 film *xXx*, as depicted below:

---

[9]     https://www.gq.com/story/how-vans-got-everyone-wearing-vans-again

[10]    https://www.businessinsider.com/vans-old-skool-is-blowing-up-the-fashion-world-2017-3

[11]    https://www.bizjournals.com/portland/news/2017/12/08/a-new-battleground-for-nike-and-adidas-the-10-most.html

[12]    https://footwearnews.com/2019/focus/athletic-outdoor/top-10-most-searched-sneakers-air-max-97-1202770252/



47.     The OLD SKOOL Trade Dress has also appeared in television shows such as *Friends*, *Modern Family*, *Animal Kingdom*, and *Ted Lasso*, and appeared on the feet of rapper Mac Miller in his music video "Good News," G-Eazy in his music video "Power," and Machine Gun Kelly in his music video "Bloody Valentine." In short, the OLD SKOOL Trade Dress has become an iconic part of popular culture, which has driven increased demand for OLD SKOOL shoes and further strengthened the OLD SKOOL Trade Dress.

48.     The combination of elements comprising the OLD SKOOL Trade Dress is distinctive, and the public recognizes and understands that the OLD SKOOL Trade Dress distinguishes and identifies genuine Vans brand shoes. As a result of Vans' extensive use of the OLD SKOOL Trade Dress, Vans has built up and now owns extremely valuable goodwill that is embodied by the OLD SKOOL Trade Dress.

### III.    VANS' SIDE STRIPE TRADEMARK

49.    One of the most recognizable features of Vans' shoes, including Vans' OLD SKOOL shoes, is the now-iconic "jazz stripe," which adorns the side panel of many Vans shoes (the "Side Stripe Mark").[13]



50.    Vans first placed the Side Stripe Mark on its shoes over 40 years ago. The Side Stripe Mark started out as a doodle drawn by Vans founder Paul Van Doren. Since then, the Side Stripe Mark has become an unmistakable—and instantly recognizable—hallmark of the Vans brand.

51.    Since at least as early as the 1970s, Vans has continuously manufactured, sold, and promoted footwear using the Side Stripe Mark. During its four-plus decades of continuous use, Vans has utilized the Side Stripe Mark across multiple Vans shoe lines and in countless color combinations.

52.    The Side Stripe Mark serves no function other than as a signifier of the Vans brand; it is an inherently distinctive symbol that Vans intended from the outset to be used as a trademark

---

[13]    The Side Stripe Mark is incorporated in and protected by many of Vans' federally-registered word and design marks, including at least U.S. Trademark Reg. No. 2,170,961, No. 2,172,482, No. 2,177,772, No. 2,206,796, No. 4,442,122, and No. 5,320,384.

designating a single source, namely, Vans. Examples of Vans footwear bearing the Side Stripe Mark are depicted below:



Vans OLD SKOOL                    Vans SK8-HI

Vans UltraRange Exo              Vans SK8-MID

Vans MTE (Mountain Edition) Boot    Vans Snowboard Boot

53.     In the United States alone, Vans has sold hundreds of millions of shoes bearing the Side Stripe Mark. Vans' U.S. sales of footwear bearing the Side Stripe Mark have accounted for tens of billions of dollars in revenue.

54.     Vans has devoted significant resources over more than 40 years to advertising and promoting its products bearing the Side Stripe Mark. Over this period, Vans has spent many millions of dollars advertising the Side Stripe Mark, including in print publications, television and Internet advertising, signage, in-store displays, and social media, among other advertising mediums. Vans' advertisements and marketing efforts have reached billions of individual consumers during that time.

55.     Vans also promotes products bearing the Side Stripe Mark by sponsoring athletes. As one example, skateboarding legend Tony Hawk has a partnership with Vans and can often be seen wearing Vans shoes with the Side Stripe Mark. A representative photograph of Tony Hawk wearing shoes with the Side Stripe Mark is reproduced below:



56.     Over the past several decades, Vans further promoted the Side Stripe Mark by

sponsoring events. For example, in 1996, Vans started sponsoring (and later purchased) the Vans

Warped Tour, which went on to become the longest running concert series in the United States.

The Vans Warped Tour operated annually every year until 2019 and played a major part in the rise

of genres such as pop-punk, emo, and hardcore punk. Vans' sponsorship and ownership of the

Vans Warped Tour not only provided a forum for Vans to promote its products bearing the Side

Stripe Mark, but also helped Vans forge close relationships with musical artists who then prominently wore Vans shoes during their performances. Blink-182's Mark Hoppus, for example, wore Vans shoes bearing the Side Stripe Mark during multiple now-famous performances at the Vans Warped Tour and at other concerts throughout the past three decades. A representative image from a Blink-182 performance in the 1990s is depicted below:



57.     As a result of Vans' promotional and sales efforts over the past four-plus decades, the Side Stripe Mark is one of the most recognizable, iconic, and valuable trademarks in the world. Due to Vans' efforts, consumers readily identify products bearing the Side Stripe Mark as being high quality merchandise emanating from, sponsored by, or approved by Vans.

58.     In addition to common law rights, Vans has registered the Side Stripe Mark on the Principal Register of the U.S. Patent and Trademark Office in connection with a wide array of goods and services. For use of the Side Stripe Mark on footwear, Vans owns all right, title, and interest in the following U.S. Trademark Registrations:

| Trademark | U.S. Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
|  | 2,177,772 | August 4, 1988 | *Class 25*: Footwear |
|  | 2,170,961 | July 7, 1998 | *Class 25*: Footwear |
|  | 2,172,482 | July 14, 1998 | *Class 25*: Footwear |

59.     Copies of the Certificates of Registration for Vans' above marks are attached as **Exhibit 2** (Reg. No. 2,177,772) and **Exhibit 3** (Reg. No. 2,170,961), and **Exhibit 4** (Reg. No. 2,172,482). Each of these registrations is valid and subsisting on the Principal Register of the United States Patent and Trademark Office, and have been since their respective registration dates.

60.     The above registrations relating to the Side Stripe Mark are incontestable. As such, each registration is conclusive evidence of the validity of the mark, Vans' ownership of the mark, and Vans' exclusive right to use the mark in connection with shoes in the United States.

61.     Vans has further strengthened the Side Stripe Mark by using it to promote Vans' other apparel and products, including by placing it on T-shirts, sweatshirts, pants, shorts, jackets, and hats, among other products. Vans owns additional U.S. Trademark Registrations, some of which are incontestable, for use of the Side Stripe Mark with other products and services. Such U.S. Trademark Registrations, which cover a wide range of goods and services, include U.S. Reg. No. 4,442,122 (issued December 3, 2013), No. 2,206,796 (issued December 1, 1998), and No. 6,062,935 (issued May 26, 2020). Copies of the Certificates of Registration for each of these marks are attached collectively as **Exhibit 5**.

62.     As a result of Vans' efforts, the public recognizes and understands that the Side Stripe Mark distinguishes and identifies Vans' products. As just an example, third-party publications and media reports routinely refer to: Vans' "iconic side stripe, which has become a hallmark design characteristic for the brand";[14] the "now-iconic side stripe";[15] and Vans' "famous side stripe detail."[16]

63.     Accordingly, thanks to Vans' dedication to providing high quality, original, and authentic footwear and apparel using the Side Stripe Mark, as well its extensive marketing and years of hard work, Vans has built up and now owns extremely valuable goodwill that is symbolized by that mark. Consumers recognize the Side Stripe Mark as a source identifier that is uniquely associated with Vans and genuine Vans brand products.

## IV.    VANS' ADDITIONAL U.S. TRADEMARK REGISTRATIONS AND PROTECTED TRADE DRESS

64.     In addition to Vans' trademarks and trade dress rights identified above, Vans owns intellectual property rights in a variety of additional U.S. Trademark Registrations and trade dress relating to Vans' shoes, product packaging (such as shoe boxes), and word marks.

65.     For example, U.S. Trademark Reg. Nos. 5,320,384 covers a mark that consists of a distinctive stitching pattern on a sneaker, including "two parallel stitched lines set across the top of a shoe toe vamp running from midsole to midsole with a slight curve set into the space between the two eye stays; and two identical parallel curved stitched lines on both sides of the shoe running from center of the midsole to the side of the toe vamp parallel stitched lines, and both curved lines form an angle approximately below the first eyelet on each side of the shoe." The mark is depicted

---

[14]     https://www.wmagazine.com/story/old-skool-vans-popular-sneaker-trend-2018
[15]     https://www.yahoo.com/entertainment/basically-every-celeb-hollywood-owns-110512940.html
[16]     https://www.gq.com/gallery/most-famous-white-canvas-sneakers

by the bold dotted lines below (the fine broken lines are not part of the mark). A copy of the Certificate of Registration for this mark is attached as **Exhibit 6** (Reg. No. 5,320,384). This trademark registration is valid and subsisting on the Principal Register of the United States Patent and Trademark Office and has been since its registration date.



*U.S. Reg. No. 5,320,384*

66.   This distinctive stitching design, which includes two parallel stitched lines that cut all the way across the shoe's upper (and that are set far back on the toe vamp near the bottom of the laces), is unique to Vans and embodies significant goodwill. The mark is also nonfunctional, in that it is not essential to the use or purpose of the shoe and there are countless alternative design options available to Vans' competitors for stitching on a sneaker.

67.   Vans has continuously manufactured, sold, and promoted footwear that included this mark since at least 1977. During that time, Vans has engaged in extensive promotion of footwear that included the stitching pattern embodied in this mark. For these reasons, the mark covered by U.S. Reg. No. 5,320,384, among others, has attained secondary meaning among

consumers, and consumers associate such stitching pattern, including the pattern of two stitched lines running all the way across the toe vamp, uniquely with Vans.

68.    Vans also owns all right, title, and interest in the following U.S. Trademark Registrations relating to other unique aspects of Vans' shoes that have come to be associated with Vans by the consuming public.

| Trademark | U.S. Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
|  | 1,244,537 | April 12, 1983 | *Class 25*: Footwear |
|  | 2,830,071 | April 6, 2004 | *Class 25*: Clothing |

| Trademark | U.S. Reg. No. | Reg. Date | Relevant Goods/Services |
|---|---|---|---|
|  | 4,623,568 | October 21, 2014 | *Class 25*: Footwear |
|  | 5,418,305 | March 6, 2018 | *Class 25*: Footwear |
|  | 6,309,462 | March 30, 2021 | *Class 25*: Footwear |
|  | 6,309,463 | March 30, 2021 | *Class 25*: Footwear |

69.    Copies of the Certificates of Registration for these marks are attached as **Exhibit 7** (Reg. No. 1,244,537), **Exhibit 8** (Reg. No. 2,830,071), **Exhibit 9** (Reg. No. 4,623,568), **Exhibit 10** (Reg. No. 5,418,305), **Exhibit 11** (Reg. No. 6,309,462), and **Exhibit 12** (Reg. No. 6,309,463). These trademark registrations are valid and subsisting on the Principal Register of the United States Patent and Trademark Office and have been since their respective registration dates.

70.    These distinctive elements of Vans' footwear have become an iconic aspect of Vans shoes, such as the OLD SKOOL shoes. Indeed, the Vans OLD SKOOL shoes have used Vans' signature waffle sole design for nearly four decades.

71.    Vans also owns protectable rights in its distinctive shoe boxes. Vans adopted the unique red and brown shoe box in June of 2014, and has since sold over one billion pairs of Vans shoes, each inside of Vans' iconic red and brown shoe boxes.



72.     Vans also owns protectable rights in other distinctive design elements of its shoes, including its footbed logo. Vans shoes have incorporated these design elements for decades, and these elements are now instantly recognizable as belonging to Vans.



73.     For the past four-plus decades, Vans has continuously manufactured, sold, and promoted footwear that include these marks and trade dress. Vans has also engaged in extensive promotion of shoes, clothing, and other items bearing these marks, including through print, television, and internet advertising.

74.     Accordingly, through its widespread use and promotion, Vans has achieved significant secondary meaning for these marks and trade dress..

## V.   VANS MAINTAINS STRICT CONTROL OVER AND VIGOROUSLY DEFENDS ITS TRADEMARKS AND TRADE DRESS

75.     Vans maintains strict quality control standards for its footwear. Vans goes to great lengths to ensure that its genuine Vans products are designed for durability and comfort, and that they are inspected and approved by Vans prior to distribution and sale. Due to these efforts by Vans, consumers and potential purchasers have come to expect high quality goods from Vans and such trust is reinforced when they see high quality Vans shoes in public.

76.     Vans not only strictly monitors the quality of the products that it sells, but also carefully determines where the products are released, when the products are released, and how the products are released.

77.     Vans also devotes significant time and resources to stopping infringement of its valuable trademarks and trade dress rights. Vans' enforcement actions are varied and multifaceted, ranging from attempts to reach an informal resolution to full-scale litigation. Vans has spent millions of dollars defending its valuable intellectual property rights, including those rights at issue in this lawsuit.

## VI.   DEFENDANT MSCHF AND ITS UNLAWFUL USE OF VANS' INTELLECTUAL PROPERTY

78.     In contrast to Vans, MSCHF sought to skip the significant investments required to develop original, authentic, and high-quality shoes, and instead chose to free-ride off Vans' reputation and popularity.

79.     MSCHF did so by developing, advertising, and offering to sell a copycat version of Vans' iconic OLD SKOOL shoes, aimed at overlapping consumers, while willfully infringing Vans' trademarks and trade dress rights.

### *MSCHF's Scheme to Copy Vans' Shoes*

80.     Rather than innovating and developing their own unique shoes, Defendant MSCHF is known for free-riding on famous brands, such as Nike.[17]

81.     On information and belief, Defendant MSCHF and Michael Stevenson collaborated to design and market the infringing Wavy Baby shoe in order to profit from the reputation and goodwill earned by Vans for over half a decade.

82.     The scope of Defendant's existing and imminently-planned infringement cannot be overstated. Defendant MSCHF and Mr. Stevenson, at the direction of MSCHF, have suddenly and aggressively marketed the Wavy Baby shoe that plainly incorporates Vans' protected trademarks and trade dress.

83.     On April 4, 2022, Michael Stevenson posted a photograph to Instagram in which the Wavy Baby shoe appears to float above Mr. Stevenson's hand. On information and belief, this post was "liked" by well over one million Instagram users and seen by far more.



---

[17]     https://www.bbc.com/news/business-56572245

84.    On April 7, 2022, Michael Stevenson posted a video to Instagram in which the Wavy Baby shoe appears to rotate. On information and belief, this post was "liked" by nearly three million Instagram users and seen by far more.



85.    On April 12, 2022, Michael Stevenson posted a photograph on Instagram in which he is wearing Wavy Baby shoes while leaning against a large, inflatable version of the Wavy Baby shoe. On information and belief, this post was "liked" by nearly one million Instagram users and seen by far more.



86.     Mr. Stevenson has also posted videos about the Wavy Baby shoes to TikTok. Notably, just days ago, Mr. Stevenson himself made a direct comparison between the OLD SKOOL and the Wavy Baby shoes. In the video, Mr. Stevenson is shown wearing Vans OLD SKOOL shoes. He walks to a microwave oven, puts the OLD SKOOL shoe in and turns the microwave on. The video quickly cuts to a shot of the Wavy Baby shoe coming out to of the microwave, implying it is the same shoe, just melted.



87.     Even the collaboration between MSCHF and Michael Stevenson is a page out of Vans' book. For years, Vans has partnered with celebrities, including rappers, to advertise its shoes. For example, Vans has partnered with rappers Anderson .Paak, A$AP Rocky, and Tiera Whack, and other musicians and bands, such as Metallica and Foo Fighters. Given Vans' history of collaborations with musical artists, on information and belief, the collaboration between MSCHF and Michael Stevenson is intended to deceive consumers into believing they are purchasing a product made by, sponsored by, approved by, or otherwise associated with Vans.

88.     Defendant's extensive marketing of the infringing Wavy Baby shoe has resulted in significant media coverage. Articles about the Wavy Baby shoe have been published by *Input Magazine*,[18] *Sportskeeda*,[19] *Sole Retriever*,[20] *Sneaker Freaker*,[21] *High Snobiety*,[22] *Grailify*,[23] *Sole Collector*,[24] *Yahoo!*,[25] and others.

89.     A testament to the striking similarity of MSCHF's Wavy Baby to Vans' iconic shoes, many of these articles specifically mention the resemblance. *Input Magazine* noted that "[i]t's impossible to ignore the sneakers' heavy resemblance to Vans' classic OLD SKOOL silhouette…" *Sportskeeda* stated the "Wavy Baby sneakers are loosely identical to the classic Vans OLD SKOOL silhouette…" *Sole Retriever* commented that the Wavy Baby is similar to the silhouette, branding, heel tag, and shoebox widely associated with Vans' OLD SKOOL shoes.

---

[18]     https://www.inputmag.com/style/mschf-tyga-wavy-baby-sneaker-vans-release-date-price

[19]     https://www.sportskeeda.com/pop-culture/mschf-x-tyga-wavy-baby-release-date-buy-price-much-awaited-sneaker-collab

[20]     https://www.soleretriever.com/news/articles/tyga-x-mschf-wavy-baby-release-date-april-2022

[21]     https://www.sneakerfreaker.com/releases/tyga-mschf-wavy-baby-sneaker-release-date

[22]     https://www.highsnobiety.com/p/mschf-wavy-shoe-sneaker-tyga-collab-vans/?msclkid=beb6ff31bba911ec9f574516033bdafb

[23]     https://www.grailify.com/en/collaborative-wavy-baby-by-mschf-and-tyga-resembles-the-vans-old-skool/

[24]     https://solecollector.com/news/tyga-mschf-wavy-baby-release-date?msclkid=7f9e78b7bb8211ecb798525f74547cea

[25]     https://www.yahoo.com/now/tyga-mschf-wavy-baby-collab-141534882.html

*High Snobiety* says the Wavy Baby "look[s] like liquified Vans." *Grailify* stated the Wavy Baby "resembles the Vans OLD SKOOL," that "it looks a lot like the Vans OLD SKOOL," and that "[y]ou can't deny the resemblance, as the upper and sole are very reminiscent of Vans' classic." *Sole Collector* noted the Wavy Baby "looks rather similar to the Vans OLD SKOOL." *Yahoo!* Commented that the Wavy Baby "appears to be loosely based on the classic Vans OLD SKOOL silhouette…"

90.     Defendant has also used marks that are nearly identical to Vans' trademarks as part of its marketing of the Wavy Baby shoe, including Vans' iconic word mark, highlighted by the stylized "V." A comparison of Vans' protected word mark[26] and the copycat stylized "Wavy" mark used by Defendant is below.

    

*Vans' Stylized Word Mark*        *Defendant's Infringing Stylized "Wavy" Mark*

91.     Aside from its confusingly similar appearance, on information and belief, the Wavy Baby shoes are also potentially dangerous. In fact, MSCHF includes a warning label directly on the sole of the Wavy Baby shoes that states: "Warning: By placing your foot in this shoe, you agree to waive any claims against MSCHF for any injury, death, or damages arising from having your foot in this shoe." This label is also displayed on the MSCHF website.

---

[26]     The Vans word mark is protected by, at least, U.S. Trademark Reg. No. 1,861,882 and No. 1,927,910.

92.     On information and belief, proceeds from the sale of the infringing Wavy Baby shoes will be split between Defendant MSCHF and Michael Stevenson.

93.     Defendant MSCHF, in collaboration with Mr. Stevenson, created the infringing Wavy Baby shoe design and related logos well after Vans acquired the trademarks and trade dress rights asserted herein, and long after Vans established itself as one of the most popular footwear companies in the world.

***Defendant's Intentional Copying of Vans' Trademarks and Trade Dress Rights***

94.     There is nothing coincidental about Defendant's infringing shoes and logos. On information and belief, Defendant's infringing shoe design is calculated and intentionally copies the iconic Vans trademarks and trade dress in order to intentionally confuse consumers as to their source, or to suggest that Vans has sponsored or otherwise approved of the infringement, by mimicking the Vans' trademarks and trade dress.

95.     For example, the infringing Wavy Baby shoes incorporate a mark on the shoe upper that is confusingly similar to Vans' Side Stripe Mark. Notably, Defendant uses this imitation side stripe mark in the same way that Vans uses the actual Side Stripe Mark on its genuine versions of, among others, its OLD SKOOL shoes.

96.     On the infringing Wavy Baby shoe, Defendant has blatantly copied the shape and location of the Side Stripe Mark, in addition to copying Vans' iconic black shoe with white Side Stripe Mark, on the shoe upper. A comparison between Vans' U.S. Trademark Registration No. 2,177,772 and Defendant's Wavy Baby demonstrates Defendant's use of a confusingly similar mark:



*U.S. Reg. No. 2,177,772*                    *Infringing Wavy Baby Shoe*

97.     As shown in the above comparison, Defendant's side stripe is confusingly similar to Vans' Side Stripe Mark when compared side by side. When encountered at separate times, as most consumers will do in the marketplace or in the post-sale context, the parties' respective designs are even more confusing.

98.     Defendant's infringing Wavy Baby shoe also deliberately incorporates another iconic feature of the Vans OLD SKOOL shoe: the square, red and white heel logo on the back of the shoe. A comparison of Vans' use of its protected trademark[27] on the OLD SKOOL shoe and Defendant's copycat logo on the Wavy Baby shoe is shown below.



*Vans OLD SKOOL Shoes*                    *Infringing Wavy Baby Shoes*

---

[27]     The heel patch found on a variety of Vans shoes, including its OLD SKOOL shoes, is protected by, at least, U.S. Trademark Registration No. 6,309,462 and No. 6,309,463.

99.     Defendant has also copied Vans' trademark Waffle Sole, as well as the Vans footbed logo. Comparisons of these features are shown below.



| VANS' TRADEMARKS AND TRADE DRESS | INFRINGING WAVY BABY SHOES |
|---|---|
| *Vans' Waffle Sole* | *Wavy Baby Waffle Sole* |
| *Vans' Footbed Logo* | *Wavy Baby Footbed Logo* |

100.     Further adding to the risk of consumer confusion, the sole of MSCHF's Wavy Baby shoes curve upward at the front and back of the shoe. As a result, MSCHF's use of Vans' trademark

Waffle Sole is even more apparent, as the copycat sole can be seen at all times, and not merely when the bottom of the shoes are viewed.

101.    In total, the Wavy Baby shoe imitates every aspect of the OLD SKOOL Trade Dress, as illustrated below:

| Vans' OLD SKOOL Trade Dress | Infringing Wavy Baby Shoe |
|---|---|
| Side Stripe Mark on the shoe upper | Yes (use of confusingly similar mark) |
| Rubberized sidewall with a consistent height around the perimeter of the shoe | Yes |
| Uppermost portion of sidewall having a three-tiered or grooved appearance | Yes |
| Textured toe box outer around the front of the sidewall | Yes |
| Visible stitching, including where the eyestay meets the vamp | Yes |
| Relative placement and proportion of elements | Yes |

*Defendant's Additional Attempts to Associate the Wavy Baby with Vans*

102.    Beyond mimicking the design of Vans' shoes, Defendant has taken additional affirmative steps in an attempt to suggest an association between Defendant and its infringing shoe and Vans.

103.    For example, Defendant MSCHF markets the infringing Wavy Baby shoe using a stylized "wavy" mark that is confusing similar to Vans' famous and protected stylized "Vans" word mark.




*Vans' Stylized Word Mark*     *Defendant's Infringing Stylized "Wavy" Mark*

104.    Worse yet, MSCHF deceptively includes the ® symbol in connection with the "wavy" mark, suggesting that the mark is federally registered. Yet, on information and belief, MSCHF has not even applied for registration of the "wavy" mark, let alone actually obtained federal registration.

105.    The very name of MSCHF's shoe—Wavy Baby—is an unmistakable attempt by Defendant to freeride on the goodwill Vans has earned through the WAYVEE mark that it has used since as least as early as August of 2021 and that is the subject of Vans' trademark application (Serial Number 97040210).

106.    Defendant also uses imagery that is intended to evoke a "skate" or "retro" image in an attempt to further suggest an association between Defendant and its infringing shoe and Vans. For example, Defendant MSCHF's marketing of the infringing Wavy Baby shoe relies heavily on images of individuals with skateboards.



([https://mschfsneakers.com/wavy-baby](https://mschfsneakers.com/wavy-baby))

107.    This includes Michael Stevenson himself, who is depicted on the MSCHF website wearing the infringing Wavy Baby shoes and holding a skateboard.



([https://mschfsneakers.com/wavy-baby](https://mschfsneakers.com/wavy-baby))

108.    Defendants further attempt to associate the Wavy Baby shoe with a "skate" image and, more specifically, with the goodwill associated with Vans' iconic footwear, claiming on the MSCHF website (reproduced below) that the Wavy Baby shoe is "a classic low top skate shoe warped for the wavy generation," "an old design paradigm run through a new one," and "the platonic ideal of a skate shoe, warped to [expletive]."



([https://mschfsneakers.com/](https://mschfsneakers.com/))

109.    On information and belief, Defendant also uses Google AdWords and other advertising methods in connection with the infringing Wavy Baby shoe to deceive consumers into believing they are purchasing a product made by, sponsored by, approved by, or otherwise associated with Vans. For instance, searching for the words "mschf" and "vans" on Google can lead to deceptive search results that include Defendant's infringing shoe rather than genuine Vans.



*Defendant's Failure to Cease and Desist*

110.     On or about April 5, 2022, Vans sent a cease and desist letter to Michael Stevenson via counsel at the law firm of Russ August & Kabat, explaining in detail the infringing nature of the Wavy Baby shoe and demanding that Mr. Stevenson confirm that he and his collaborators, namely Defendant MSCHF, would cancel the release and future marketing of the Wavy Baby shoe.

111.     On or about April 6, 2022, Vans sent a similar cease and desist letter to Defendant MSCHF via counsel at the law firm of Debevoise & Plimpton LLP, notably demanding that MSCHF confirm that it would cancel the release and future marketing of the Wavy Baby shoe.

112.     Despite exchanging several letters and attempting to negotiate an amicable resolution of this matter, Vans and Defendant MSCHF have been unable to agree on an appropriate resolution.

113.     As a result, and in order to protect its valuable and hard-earned intellectual property rights, Vans has been left with no choice but to file this lawsuit to stop Defendant's infringement.

## VII.    INJURIES TO VANS AND THE PUBLIC

114.    Without permission, authorization, or consent from Vans, Defendant has infringed Vans' trademarks and trade dress rights by designing, making, using, promoting, advertising, selling, and/or offering to sell the Wavy Baby shoe that is confusingly similar to Vans' trademarks and trade dress.

115.    The infringing Wavy Baby shoe produced, distributed, marketed, promoted, offered for sale, and sold by Defendant in collaboration with Michael Stevenson are not made by Vans. Nor are Defendant's products associated, affiliated, or connected with Vans, or licensed, authorized, sponsored, endorsed, or approved by Vans in any way.

116.    The likelihood of confusion, mistake, and deception engendered by Defendant's infringement of Vans' trademarks and trade dress is causing irreparable harm to the goodwill symbolized by the marks and the reputation for originality, authenticity, and quality that they embody.

117.    Defendant MSCHF's activities, as well as the activities of Michael Stevenson at MSCHF's direction, are likely to cause confusion before, during, and after the time of purchase because consumer, prospective purchasers, and others viewing Defendant's infringing Wavy Baby shoe at the point of sale or post-purchase are likely—due to Defendant's use of confusingly similar imitations of Vans' trademarks and trade dress—to mistakenly attribute the infringing Wavy Baby shoe to Vans. By causing a likelihood of confusion, mistake, and deception, Defendant is inflicting irreparable harm on Vans and damaging its reputation.

118.    On information and belief, Defendant intends to sell the infringing Wavy Baby shoe beginning on Aril 18, 2022, in overlapping channels of trade, to overlapping target consumers.

119.    On information and belief, MSCHF and Michael Stevenson have already begun planning additional releases of the Wavy Baby shoe, including in different colorways. For

example, Michael Stevenson can be seen wearing a pink version of the Wavy Baby shoes in an Instagram post from April 12, 2022, excerpted below.



120.    On information and belief, Defendant knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar imitations of Vans' trademarks and trade dresses.

121.    On information and belief, Defendant deliberately intended to trade off the popular and positive goodwill associated with Vans and its trademarks and trade dress rights by using features on the infringing Wavy Baby shoe that are nearly identical to or that include a confusingly similar combination of elements as Vans' trademarks and trade dress rights.

122.    Defendant knew or should have known of Vans' prior rights in its asserted trademarks and trade dresses before using their imitation marks, and thus Defendant has acted willfully with respect to Vans' trademarks and trade dress rights.

123.    Vans has no adequate remedy at law.

## COUNT I
## Federal Trademark Infringement (15 U.S.C. § 1114)

124.    Vans repeats and incorporates by reference the allegations in the preceding paragraphs.

125.    Defendant has knowingly used and continues to use in commerce, without Vans' permission or authorization, Vans' asserted trademarks and trade dress rights, and/or confusingly similar marks and trade dress, in connection with products that Defendant designs, manufactures, imports, distributes, promotes, advertises, offers for sale, and/or sells in the United States, namely the infringing Wavy Baby shoes.

126.    Defendant's use of Vans' trademarks and trade dress rights has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are produced or distributed by Vans, or are associated or connected with Vans, or have the sponsorship, endorsement, or approval of Vans.

127.    Defendant's infringing Wavy Baby shoes are confusingly similar to Vans' federally registered marks in violation of 15 U.S.C. § 1114. Defendant's activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Vans' goodwill and reputation as embodied in the Vans' marks, for which Vans has no adequate remedy at law.

128.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Vans' marks to Vans' great and irreparable harm.

129.    Defendant caused and is likely to continue causing substantial injury to the public and to Vans, and Vans is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II
## Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))

130.    Vans repeats and incorporates by reference the allegations in the preceding paragraphs.

131.    Based on extensive marketing, promotion, and use, Vans' asserted trademarks and trade dresses have acquired distinctiveness and enjoy secondary meaning among consumers, instantly identifying Vans as the source of the products with which they are used.

132.    Defendant has knowingly used and continues to use in commerce, without Vans' permission or authorization, Vans' asserted trademarks and trade dress rights, and/or confusingly similar marks, in connection with products that Defendant designs, manufactures, imports, distributes, promotes, advertises, offers for sale, and/or sells in the United States, namely the infringing Wavy Baby shoe.

133.    Defendant's use of Vans' trademarks and trade dress rights has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are produced or distributed by Vans, or are affiliated, connected, or associated with Vans, or have the sponsorship, endorsement, or approval of Vans.

134.    Defendant has made false representations, false descriptions, and false designations of, on, or in connection with its goods in violation of 15 U.S.C. § 1125(a). Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion

and deception of members of the trade and public, and, additionally, injury to Vans' goodwill and reputation as embodied in the marks, for which Vans has no adequate remedy at law.

135.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Vans' marks to the great and irreparable injury of Vans.

136.    Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Vans. Vans is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### COUNT III
### Federal Trademark Dilution (15 U.S.C. § 1125(c))

137.    Vans repeats and incorporates by reference the allegations in the preceding paragraphs.

138.    The Vans trademarks and trade dress asserted in this action are distinctive and famous within the meaning of 15 U.S.C. § 1125(c) and became famous before Defendant developed, offered to sell, or sold the Wavy Baby shoe. Vans advertises and uses its famous trademarks and trade dress in connection with footwear, among other things, extensively throughout the United States, and the trademarks and trade dress are highly recognizable in the industry and by the consuming public.

139.    To protect its marks, Vans actively polices the use of its trademarks and trade dress by third parties.

140.    Defendant has used and continues to use Vans' trademarks and trade dress in commerce in connection with the Wavy Baby shoe.

141.    Defendant's actions are damaging and likely to cause dilution of the famous Vans trademarks and trade dress through, at the very least, blurring or impairing the distinctiveness of the Vans trademarks and trade dress.

142.    Because of Defendant's dilution, Vans has suffered, and will continue to suffer, irreparable injury and substantial damages, while Defendant has been, and will continue to be, unjustly enriched, unless Defendant's conduct is enjoined.

143.    Defendant's dilution of the famous Vans trademarks and trade dress is and was intentional and willful.

144.    The dilution of the famous Vans trademarks and trade dress caused by Defendant violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT IV
## New York Unfair Trade Practices (NY Gen. Bus. Law § 349)

145.    Vans repeats and incorporates by reference the allegations in the preceding paragraphs.

146.    Defendant's use of the Vans trademarks and trade dress in the United States in connection with the Wavy Baby shoes is materially deceptive.

147.    Defendant's use of the Vans trademarks and trade dress is in connection with the advertising, offer for sale, and sale of products and is directed at customers located in the United States generally, and in the State of New York specifically.

148.    These commercial advertisements and statements have and will continue to cause the loss of goodwill and the loss of current and prospective customers of Vans who, but for the false and misleading advertisements and statements made by Defendant, would conduct business with Vans or its authorized licensees.

149.    Vans has been and will continue to be irreparably harmed unless Defendant's use of the Vans trademarks and trade dress in the United States in connection with the infringing Wavy Baby shoes is enjoined.

## COUNT V
### Trademark Dilution (NY Gen. Bus. Law § 360-1)

150.    Vans repeats and incorporates by reference the allegations in the preceding paragraphs.

151.    The Vans trademarks and trade dress asserted in this action are distinctive and famous, including within the meaning of 15 U.S.C. § 1125(c), throughout the United States and specifically within the State of New York.

152.    The Vans trademarks and trade dress became distinctive and famous before Defendant developed, offered to sell, or sold the Wavy Baby shoe.

153.    Defendant has used and continues to use Vans' trademarks and trade dress in commerce in connection with the Wavy Baby shoe.

154.    Defendant's actions are damaging and likely to cause dilution of the famous Vans trademarks and trade dress through, at the very least, blurring or impairing the distinctiveness of the Vans trademarks and trade dress.

155.    Because of Defendant's dilution, Vans has suffered, and will continue to suffer, irreparable injury and substantial damages, while Defendant has been, and will continue to be, unjustly enriched, unless Defendant's conduct is enjoined.

## COUNT VI
### Common Law Trademark Infringement and Unfair Competition

156.    Vans repeats and incorporates by reference the allegations in the preceding paragraphs.

157.     Vans is the owner of all rights and title to, and has valid and protectable prior rights in, the asserted trademarks and trade dress rights.

158.     Vans engages in the sale and distribution of footwear and apparel, employing the asserted trademarks and trade dress rights in the State of New York and has done so since long before Defendant began its infringing use of Vans' marks as alleged herein.

159.     Vans' trademarks and trade dress rights are inherently distinctive. In addition, based on extensive marketing, promotion, and use, Vans' marks have acquired distinctiveness and enjoy secondary meaning among consumers, instantly identifying Vans as the source of the products with which they are used.

160.     Defendant has reproduced, copied, and imitated Vans' trademarks and trade dress rights in connection with advertising, promoting, offering to sell, and/or selling footwear bearing infringing marks and trade dress, in competition with Vans and without Vans' consent.

161.     Defendant's use of confusingly similar imitations of Vans' trademarks and trade dress rights has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are produced or distributed by Vans, or are affiliated, connected, or associated with Vans, or have the sponsorship, endorsement, or approval of Vans.

162.     Upon information and belief, Defendant's acts of common law trademark infringement and unfair competition have been willful and deliberate, and Defendant has and will continue to profit and be unjustly enriched by sales that Defendant would not otherwise have made but for its unlawful conduct.

163.     Defendant's willful and deliberate acts described herein have caused injury and damage to Vans, and have caused irreparable injury to Vans' goodwill and reputation and, unless

enjoined, will cause further irreparable injury, whereby Vans has no adequate remedy at law. Vans, therefore, is entitled to injunctive relief.

164.    Vans is also entitled to its actual damages, Defendant's profits, and an award of costs and attorneys' fees.

## PRAYER FOR RELIEF

Vans respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

1.    Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined from:

a.    advertising, marketing, promoting, offering for sale, distributing, or selling the infringing Wavy Baby shoes;

b.    using Defendant's side stripe mark or any mark confusingly similar thereto on or in connection with any of Defendant's goods or services;

c.    using Vans' Side Stripe Mark, OLD SKOOL Trade Dress, or any of Vans' registered trademarks, or any other copy, reproduction, colorable imitation, or simulation of Vans' marks on or in connection with Defendant's goods or services;

d.    using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Vans' trademarks, trade dresses, names, or logos;

e.       using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Vans, or are sponsored or authorized by Vans, or are in any way connected or related to Vans; and

f.       passing off, palming off, or assisting in passing off or palming off Defendant's goods as those of Vans, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

2.       Defendant be ordered to cease offering for sale, marketing, promoting, and selling and to recall all infringing footwear, or any other goods bearing Defendant's confusingly similar imitation marks that are in Defendant's possession or have been shipped by Defendant or under its authority, to any store, affiliate, subsidiary, business, wholesaler, distributor, retailer, or marketer, and also to deliver to each such entity a copy of this Court's order as it relates to said injunctive relief against Defendant;

3.       Defendant be ordered to deliver up for impoundment and for destruction, all infringing footwear, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody or under the control of Defendant that are found to adopt, infringe, or misappropriate Vans' trademarks or that otherwise unfairly compete with Vans and its products;

4.       Defendant be compelled to account to Vans for any and all profits derived by Defendant from the sale or distribution of the infringing footwear;

5.      Defendant be compelled to account for any and all profits derived by Defendant from the sale or distribution of other products while using Vans' trademarks or trade dress rights, and/or confusingly similar marks, to advertise such products;

6.      Vans be awarded all damages caused by the acts forming the basis of this Complaint;

7.      Based on Defendant's knowing and intentional use of a confusingly similar imitation of Vans' trademarks and trade dress rights, the damages awarded be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

8.      Defendant be required to pay to Vans the costs, expenses, and reasonable attorneys' fees incurred by Vans in this action pursuant to 15 U.S.C. § 1117(a) and New York state law;

9.      Based on Defendant's willful and deliberate infringement of Vans' trademarks and trade dress rights, and to deter such conduct in the future, Vans be awarded punitive damages;

10.    Vans be awarded restitution for Defendant's unjust enrichment;

11.    Vans be awarded prejudgment and post-judgment interest on all monetary awards; and

12.    Vans be granted such other and further relief as the Court may deem just.

## JURY DEMAND

Vans hereby demands a trial by jury on all claims and issues so triable.

Dated:  April 14, 2022

Respectfully submitted,

**MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**

*/s/ Philip A. Goldstein*
Michael L. Simes
Philip A. Goldstein
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel:  (212) 548-7013
Fax:  (212) 715-6260
msimes@mcguirewoods.com
pagoldstein@mcguirewoods.com

Tanya L. Greene (*pending pro hac vice*)
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071
Tel:  (213) 457-9879
Fax:  (213) 547-9899
tgreene@mcguirewoods.com

Lucy J. Wheatley (*pending pro hac vice*)
Matthew G. Rosendahl (*pending pro hac vice*)
800 East Canal Street
Richmond, VA 23219
Tel:  (804) 775-1000
Fax: (804) 698-2016
lwheatley@mcguirewoods.com
mrosendahl@mcguirewoods.com

Matthew W. Cornelia (*pending pro hac vice*)
2000 McKinney Ave., Suite 1400
Dallas, TX 75201
Tel:  (214) 932-6400
Fax:  (214) 932-6499
mcornelia@mcguirewoods.com

*Counsel for Plaintiffs*
*Vans, Inc. and VF Outdoor, LLC*