UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANS, INC. and VF OUTDOOR, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MSCHF PRODUCT STUDIO, INC.<br><br>Defendant. | Case No. 1:22-cv-02156-WFK-RML |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

SWANSON, MARTIN & BELL, LLP
William D. Patterson (*pro hac vice*)
Nicole E. O'Toole (*pro hac vice* forthcoming)
330 N. Wabash, Suite 3300
Chicago, IL 60611
Telephone: (312) 321-8445
wpatterson@smbtrials.com
notoole@smbtrials.com

MSCHF PRODUCT STUDIO, INC.
John Belcaster (*pro hac vice* forthcoming)
62 Bayard Street
Brooklyn, NY 11222
john@mschf.xyz

DEBEVOISE & PLIMPTON LLP
David H. Bernstein
Megan K. Bannigan
Marissa MacAneney
Timothy Cuffman
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6696
Fax: (212) 521-7696
dhbernstein@debevoise.com
mkbannigan@debevoise.com
mpmacaneney@debevoise.com
tcuffman@debevoise.com

*Counsel for Defendant MSCHF Product Studio, Inc.*

Pursuant to the Court's April 18, 2022 Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction (Dkt. 20), Defendant MSCHF Product Studio, Inc. ("MSCHF") respectfully submits this supplemental memorandum of law in opposition to the application for a temporary restraining order and preliminary injunction filed by Plaintiffs Vans, Inc. and VF Outdoor, LLC (together, "Vans").

## PRELIMINARY STATEMENT

The Court should deny Vans' application because, not only is Vans unlikely to prevail on the merits or show that the balance of hardships or public interest tip in its favor, *see* Opposition Br. (ECF 13) at 9–25, but also, now that the *Wavy Baby* release is over, Vans is unable to make a "clear showing" that it would face **imminent or irreparable harm** absent an injunction. *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005).

*Wavy Baby* was a limited-edition artwork, which was first publicly revealed on February 25, 2022, and released on April 18. The release (which MSCHF calls a "drop"), sold out that same day. Because it was a limited-edition release and the demand was so high, thousands of collectors who attempted to purchase the works were left out. The *Wavy Baby* drop is now complete, the *Wavy Baby* works have been shipped to the purchasers, and there is no longer any conduct to temporarily or preliminarily enjoin. MSCHF will not re-release the *Wavy Baby* works from the April 18 drop. There is, therefore, no imminent or irreparable harm to enjoin, which renders Vans' request for a temporary and preliminary injunction moot.

Further, as the expert declaration of Kenneth Anand, former Head of Business Development and General Counsel of the streetwear and sneaker culture YEEZY brand, explains, typical sneakerheads and collectors, who are the audience and purchasers of MSCHF's shoes, are savvy enough to spot even subtle differences that distinguish manufacturers. The MSCHF *Wavy Baby* – with its very dramatic and wavy sole – is unlike any shoe on the market.

1

The significant differences in both the design and appearance of the *Wavy Baby* and Vans' Old Skool make it unlikely that potential consumers would confuse MSCHF's *Wavy Baby* with Vans. Rather, potential consumers will immediately know that MSCHF's *Wavy Baby* is not a Vans' Old Skool and was not produced by Vans. Further, *Wavy Baby* and Vans' Old Skool do not compete for the same consumer dollars.

In any event, as MSCHF already explained in its initial brief in opposition to plaintiffs' motion, the *Wavy Baby* project is expressive speech, protected under the First Amendment. An injunction would be an unconstitutional prior restraint. Controlling Second Circuit case law makes clear that any trademark concerns must give way to the substantial public interest in free expression.

Whereas *Wavy Baby* will be sought out when one looks for a statement piece and to stand out from the crowd, Vans' Old Skool shoes will be purchased when a consumer wants a shoe everyone has seen. All of these facts make it even more unlikely that Vans will be likely to succeed on the merits – or make a "clear showing" of irreparable harm.

## FACTS

Vans' Good Friday eve submission expressly sought an injunction "to prevent the imminent release by Defendant MSCHF Product Studio, Inc. . . . of its WAVY BABY shoes . . . on Monday, April 18, 2022, at 12:00 p.m. EST." Pl.'s Br. at 1. That request is now moot. *Wavy Baby* (which was first publicly revealed nearly two months earlier, on February 25, 2022, through a video for Tyga's and Doja Cat's hit song "Freaky Deaky") was released on April 18, 2022, at 12:00 p.m. Eastern Daylight Time (as was previously announced on MSCHF's app on March 21, 2022). Registered users of the app were able to submit orders for *Wavy Baby* during the hour that followed. 9,366 users of the MSCHF Sneakers app – throughout all 50 states and across 48 countries – submitted orders for *Wavy Baby* during that one-hour window. Because

2

demand for *Wavy Baby* far outstripped the available supply of these limited-edition works, MSCHF randomly selected 4,306 applicants through a raffle and notified all applicants of whether they were successful that afternoon. MSCHF thereafter shipped the *Wavy Baby* works to the successful applicants; the fulfillment will be complete on April 20. Supp. Whaley Decl. ¶¶ 12–13.

As MSCHF's CEO has confirmed, MSCHF will not re-release the *Wavy Baby* works that were sold in the April 18 drop, or any shoes that are confusingly similar to Vans' shoes. MSCHF does have approximately 280 pairs of *Wavy Baby* works in its inventory, which it is holding to correct fulfillment errors, for archival purposes, and to fulfill requests from museums and galleries for exhibitions, but MSCHF has represented to the Court that it will not distribute *any* of these archival pairs pending the Court's final judgment on the merits in this case. Supp. Whaley Decl. ¶ 14. Although MSCHF does intend to release another shoe with a similar silhouette in October, that shoe will have different branding, colors, and design elements.[1] Supp. Whaley Decl. ¶ 42.

MSCHF will not make any further posts on its website, app, or social media channels about *Wavy Baby*. In fact, MSCHF conducts very limited advertising and promotion of its artworks prior to their drops. It posts one single image relating to each drop on its social media platforms, maintains a website, and sometimes provides certain individuals in the relevant industries (here, the *sneakerhead* industry) advanced copies of its works. Because the limited *Wavy Baby* drop is now over, that limited promotional conduct has already ceased. The social media post will be deleted on April 25 – prior to the TRO hearing in this case – and replaced

---

[1] Once the October artwork is finalized, MSCHF will agree to share the design with Vans (subject to a protective order) sufficiently in advance of the drop to allow Vans to seek provisional relief if it believes the October shoe violates any of its rights. Supp. Whaley Decl. ¶ 42.

with a post for MSCHF's next drop. The MSCHF Sneakers website, which now is advertising MSCHF's next release, which is scheduled for June 17, 2022, displays *Wavy Baby* only in an archival position and notes that it is "Sold Out." MSCHF will distribute no additional *Wavy Baby* works for promotional or any other purposes. Indeed, MSCHF has moved on to concentrate on the drop of its next artwork on Monday, April 25. Supp. Whaley Decl. ¶¶ 40.

## ARGUMENT

**I.     Vans cannot prove irreparable harm.**

Courts hold that "[t]he occurrence of the action sought to be enjoined normally moots the request for preliminary injunctive relief." *Moore*, 409 F.3d at 510; *see also BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 45 n.1 (2d Cir. 2019) (quoting *Bank of New York Co. v. Ne. Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993)). Accordingly, because MSCHF sold all 4,306 available pieces of *Wavy Baby* and fulfilled all orders soon thereafter, Vans' application for a preliminary injunction to prevent the *Wavy Baby* launch is moot.

Further, where there is no reasonable prospect that the defendant will engage in the conduct the plaintiff seeks to enjoin, courts are clear that the showing for irreparable harm has not been met. *See, e.g.*, *Stiefel & Co. v. Blitz*, No. 93 CIV. 6080 (PNL), 1993 WL 526386, at *5 (S.D.N.Y. Dec. 14, 1993) (denying preliminary injunction because plaintiff could not show irreparable harm where defendant had sworn in an affidavit to cease challenged conduct); *see also Robert Stigwood Grp. Ltd. v. Hurwitz*, 462 F.2d 910, 913 (2d Cir. 1972) (appeal from order denying injunctive relief is moot because "'one-shot' series of [allegedly infringing theatrical] performances" had "come and gone" and "there is no reasonable expectation that the [alleged] wrong will be repeated"). MSCHF has submitted a sworn declaration that the *Wavy Baby* limited drop has been completed, that it will not manufacturer or sell any *Wavy Baby* works again in its current iteration, that it will not distribute any of the *Wavy Baby* works remaining in

4

its archival inventory pending the conclusion of this case, and that it will not design, manufacture, sell, or otherwise distribute any other works that comment on Vans or reference Vans' trademarks or trade dress during the pendency of this litigation. As MSCHF further explained, there will be no further advertising or promotion of the *Wavy Baby*, the social media post will soon be deleted to make way for the new drop, and the *Wavy Baby* work has already been moved to an archival spot on the website.

To the extent archival references to *Wavy Baby* remain on MSCHF's social media, mobile application, and website, those references rebut the notion of irreparable harm, rather than support any assertion of irreparable harm. That is because these references all make clear that the *Wavy Baby* works come from MSCHF, in collaboration with Tyga, and not from Vans *Worldwide Sport Nutritional Supplements, Inc. v. Van Horn Techs., Inc.*, No. 97-CV-1274, 1997 WL 698044, at *13 (N.D.N.Y. Nov. 6, 1997) ("This circuit, as well as others, has explained that clear labeling of a product with the manufacturers' name avoids a likelihood of confusion with the product of a competitor."). All pairs of *Wavy Baby* are clearly marked as being produced by MSCHF and have absolutely no reference to Vans.

**II.     Vans is not likely to succeed on the merits.**

As MSCHF already has explained, *Wavy Baby* is protected First Amendment expression. *See* Opp'n Br. at 9–10. But even if it were not, Vans would be unlikely to succeed on the merits of its infringement and dilution claims because prospective purchasers of *Wavy Baby* easily recognize that *Wavy Baby* was not produced by Vans or with the endorsement of Vans.

*Wavy Baby* and Old Skools are likely to appeal to different consumer bases. The Old Skool is mass produced, easily available, and inexpensive, so it is an everyday shoe with broad appeal. *See* Anand Decl. ¶ 60. In contrast, *Wavy Baby* is a limited-release work that a collector

5

can now find *only* by scouring re-sale websites and consignment shops, such as Flight Club, StockX, or GOAT. *See id.* Thus, *Wavy Baby* will appeal only to collectors. *See id.* ¶¶ 50–70. Old Skools and *Wavy Baby* are also very different in terms of collectability. The Vans' Old Skool is an iconic shoe, but it is also mass-produced and continuously available from the Vans' website for $60–65, so consumers can purchase the shoe at any time. By contrast, the *Wavy Baby* was only available in a limited quantity and for a limited time, so *Wavy Baby* will be far more scarce and far more collectable than Vans' Old Skool. Collectors understand that wearing shoes decreases their value, making it likely the majority of limited-edition *Wavy Baby* works will not be worn at all. *See id.* ¶¶ 56–59. Another factor distinguishing the usability of the shoes and their likely customer base is their replaceability—consumers can readily replace a Vans Old Skool, whereas *Wavy Baby* would be very difficult and very expensive to replace. As a result of these differences, *Wavy Baby* and Vans' Old Skool do not compete for the same consumer dollars. *See id.* ¶ 60.

Sneaker collectors tend to carefully consider their purchasing decisions. Collectors are particularly careful when considering the purchase of limited-edition shoes or other shoes that they cannot buy directly from a manufacturer, because such shoes are sought typically for display value or their investment value. *See id.* ¶¶ 25–27. If a collector was unable to purchase the *Wavy Baby* directly from MSCHF on April 18, she could likely find a copy on a re-sale site, such as Flight Club, StockX, or GOAT. When collectors make purchases from such websites, they typically search by brand, looking for brands they like to collect and for specific models that they like. On re-sale websites and in re-sale stores, the manufacturer is always clearly displayed. So, an Old Skool will be identified as a "Vans" while *Wavy Baby* will be identified as a "MSCHF." Indeed, Flight Club, GOAT, and StockX already clearly label *Wavy Baby* works as

6

being produced by MSCHF.  *See id.* ¶¶ 52–54; Supp. Whaley Decl. ¶¶ 30–34.

Even if none of the above were true, potential purchasers of *Wavy Baby* would immediately know that MSCHF's *Wavy Baby* is not a Vans Old Skool and was not produced by Vans.  Vans' Old Skool is a prototypical skate shoe, which is a category of shoe defined by its flat sole, vulcanized or polyurethane sidewall, light weight, and typically low-rise profile. Although skate shoes are designed with skateboarders in mind, they attract a wide audience who appreciate the look of the shoes and that they are comfortable to wear for long periods of time. The flat sole on a skate shoe is essential because it increases the surface area that makes contact with the ground and the skateboard, and therefore enhances the shoe's grip and the rider's balance, making skateboarding easier.  *See* Anand Decl. ¶¶ 34, 37–39.  Nearly all Vans shoe models—including *all* of its Old Skool styles—have a flat sole.  *Wavy Baby* is, by definition, not a skate shoe.  Potential purchasers would immediately recognize the distinctive elements of *Wavy Baby*, including its wavy sole, wavy side stripe, wavy stitching, tall and thick side wall, and heavy weight.  Each of these elements is different than the Old Skool and other typical skate shoes.  *See id.* ¶¶ 43–49.  Furthermore, Vans' "jazz stripe" is iconic throughout the shoe industry and a shoe collector would immediately recognize it.  Nearly every model of Vans shoes has a jazz stripe.  A collector would immediately notice that the wave stripe on the side of *Wavy Baby* is not a jazz stripe.  *See id.* ¶ 64.

Shoe collectors are attuned to details on shoes.  *See id.* ¶ 65.  Furthermore, because there are so many similar skate shoes on the market, will spot even subtle differences to distinguish manufacturers.  *See id.* ¶¶ 22, 42.  Accordingly, in addition to the obvious differences noted above, purchasers would easily notice differences between *Wavy Baby* and Old Skools in terms of stitching, the sizing tag on the tongue, and the packaging for the shoes.  *See id.* ¶¶ 65–70.

7

MSCHF acknowledges that there are some Internet posts from commentators who are not MSCHF customers who appear not to understand MSCHF's art. Unfortunately, this is the experience of many artists, from Pablo Picasso to Andy Warhol to Jackson Pollock—some people understand the messages inherent in the art and some do not. To the extent some non-purchaser commentators did not understand that *Wavy Baby* was a MSCHF artwork—perhaps because they are not familiar with MSCHF—that is neither purchaser nor post-purchase confusion, because none of those comments is being made in connection with purchasing the limited number of works available in the secondary market. In any event, such misunderstanding is why *Rogers* protects artistic, expressive speech, even if some observers may not understand the speech or may have misperceptions about the speech.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in MSCHF's memorandum of law in opposition to Vans' application and MSCHF's supporting declarations, MSCHF respectfully requests that the Court deny Vans' application for a temporary restraining order and preliminary injunction. MSCHF also looks forward to promptly meeting with the Court and counsel for Vans to discuss an expedited schedule for resolution of this dispute on the merits given the core First Amendment issues raised by this Complaint.

Dated: New York, New York
       April 20, 2022

Respectfully submitted,

By: /s/ *David H. Bernstein*
    David H. Bernstein

DEBEVOISE & PLIMPTON LLP
David H. Bernstein
Megan K. Bannigan
Marissa MacAneney
Timothy Cuffman
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
dhbernstein@debevoise.com
mkbannigan@debevoise.com
mpmacaneney@debevoise.com
tcuffman@debevoise.com

SWANSON, MARTIN & BELL, LLP
William D. Patterson (*pro hac vice*)
Nicole E. O'Toole (of counsel)
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-8445
wpatterson@smbtrials.com
notoole@smbtrials.com

MSCHF PRODUCT STUDIO, INC.
John Belcaster (of counsel)
62 Bayard Street
Brooklyn, NY 11222
john@mschf.xyz

*Counsel for Defendant MSCHF Product Studio, Inc.*