**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VANS, INC. and VF OUTDOOR, LLC, | |
| Plaintiffs, | Case No. 1:22-cv-02156-WFK-RML |
| v. | JURY TRIAL DEMANDED |
| MSCHF PRODUCT STUDIO, INC., | Date of Service: April 22, 2022 |
| Defendant. | |

**PLAINTIFFS VANS, INC. AND VF OUTDOOR, LLC'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A**
**TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**

Philip A. Goldstein
Michael L. Simes
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel:  (212) 548-2100
Fax:  (212) 548-2150
pagoldstein@mcguirewoods.com
msimes@mcguirewoods.com

Tanya L. Greene (*pro hac vice*)
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071
Tel:  (213) 457-9879
Fax:  (213) 547-9899
tgreene@mcguirewoods.com

Lucy J. Wheatley (pending p*ro hac vice*)
Matthew G. Rosendahl (pending *pro hac vice*)
800 East Canal Street
Richmond, VA 23219
Tel:  (804) 775-1000
Fax: (804) 698-2016
lwheatley@mcguirewoods.com
mrosendahl@mcguirewoods.com

## TABLE OF CONTENTS

I.       INTRODUCTION ............................................................................................ 1

II.      ARGUMENT ................................................................................................... 1

   A.    VANS IS LIKELY TO SUCCEED ON THE MERITS OF ITS INFRINGEMENT CLAIMS ........ 1

      1.   *CONSUMER CONFUSION IS NOT JUST LIKELY, IT HAS ALREADY OCCURRED*
           *(FACTOR FIVE)* ........................................................................................ 1

      2.   *VANS' MARKS AND TRADE DRESS RIGHTS ARE STRONG (FACTOR ONE)* ............... 2

      3.   *THE WAVY BABY IS HIGHLY SIMILAR TO THE ASSERTED MARKS (FACTOR TWO)* .... 3

      4.   *MSCHF SELLS IDENTICAL PRODUCTS TO OVERLAPPING CONSUMERS (FACTOR*
           *THREE)* .................................................................................................... 4

      5.   *MSCHF HAS ACTED IN BAD FAITH (FACTOR SIX)* ......................................... 4

      6.   *MSCHF'S INFRINGING SHOES ARE OF QUESTIONABLE QUALITY (FACTOR SEVEN)* 5

      7.   *PURCHASERS OF FOOTWEAR ARE UNLIKELY TO EXERCISE SIGNIFICANT CARE*
           *(FACTOR EIGHT)* ....................................................................................... 5

   B.    THE *ROGERS* TEST DOES NOT APPLY TO AN INFRINGING MASS-PRODUCED
         SNEAKER ....................................................................................................... 5

   C.    THE WAVY BABY SHOES DO NOT MEET THE TEST FOR A PARODY ........................ 7

   D.    VANS IS LIKELY TO SUCCEED ON THE MERITS OF ITS DILUTION CLAIM. ................. 8

   E.    VANS IS LIKELY TO SUFFER IRREPARABLE HARM .................................................. 8

   F.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST TIP DECIDEDLY IN VANS'
         FAVOR ......................................................................................................... 10

III.     CONCLUSION............................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bulman v. 2BKCO, Inc.*,
   882 F. Supp. 2d 551 (S.D.N.Y. 2012).....................................................................................1

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing*,
   886 F.2d 490 (2d Cir. 1989).............................................................................................6, 7

*Glenn H. Curtiss Museum of Local History v. Confederate Motors, Inc.*,
   No. 20-CV-6237-CJS, 2021 WL 514229 (W.D.N.Y. Feb. 11, 2021) ......................................2

*Harley Davidson, Inc. v. Grottanelli*,
   164 F.3d 806 (2d Cir. 1999)...............................................................................................7

*Hope Organics LLC v. Preggo Leggings LLC*,
   No. 21-CV-2416-TMR, 2021 WL 5919367 (S.D.N.Y. Dec. 15, 2021) ...................................2

*Int'l Equity Investments, Inc. v. Opp. Equity Partners*,
   No. 05-CV-2745-LAK, 2006 WL 1293281 (S.D.N.Y. May 10, 2006).....................................9

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
   156 F. Supp. 3d 425 (S.D.N.Y. 2016), *aff'd*, 674 Fed. App'x 16 (2d Cir. 2016) .................6, 7

*Malletier v. Burlington Coat Factory Warehouse Corp.*,
   426 F.3d 532 (2d. Cir. 2005)...........................................................................................2, 4

*Museum of Modern Art v. MOMACHA IP LLC*,
   339 F. Supp. 3d 361 (S.D.N.Y. 2018)..................................................................................2

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)............................................................................................5, 6

*Schieffelin & Co. v. Jack Co. of Boca, Inc.*,
   725 F. Supp. 1314 (S.D.N.Y. 1989).....................................................................................8

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
   588 F.3d 97 (2d Cir. 2009)................................................................................................3

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
   221 F. Supp. 2d 410 (S.D.N.Y. 2002)..................................................................................8

*Virgin Enters., Ltd. v. Nawab*,
   335 F.3d 141 (2d Cir. 2003)...............................................................................................5

iii

**Other Authorities**

First Amendment ...........................................................................................................1, 5, 6, 10

Fed. R. Evid. 408 ...........................................................................................................9

## I.      INTRODUCTION

The Opposition (Dkt. 13) filed by Defendant MSCHF fails to offer any legitimate justification for MSCHF's blatant trademark infringement. MSCHF's extensive, self-serving discussion of its artistic goals does not change the fact that it is selling an infringing sneaker, and irreparably harming Vans in the process. Vans is likely to succeed on the merits of its infringement and dilution claims because (a) there is not only a likelihood of confusion, but significant actual confusion among consumers; and (b) the Wavy Baby is an infringing (and confusing) sneaker and thus not protected under the First Amendment. An injunction is appropriate and necessary.

## II.     ARGUMENT

### A.      Vans Is Likely to Succeed on the Merits of Its Infringement Claims

MSCHF does not contest that Vans has valid and protectable marks that MSCHF is not permitted to use. Therefore, the sole remaining issue is likelihood of confusion.[1]

### 1.   *Consumer Confusion Is Not Just Likely, It Has Already Occurred (Factor Five)*

Since Vans filed its Motion, numerous consumers have expressed their confusion and disbelief via social media that the Wavy Baby is not a Vans product or collaboration. Notably, these individuals, followers of *Nice Kicks* and *Sneaker News*, are precisely the types of consumers who would purchase Vans, and MSCHF's, sneakers. Representative comments include:[2]

- "Everyone who saw the shoe thought it was vans"

- "I thought they were a vans collab this whole time"

- "And they should. I woulda bet money they were Vans"

---

[1] Vans does not include a separate section on "bridging the gap" in this Reply because the products at issue operate in the same market, making this factor irrelevant. *See Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 562 (S.D.N.Y. 2012). Nevertheless, MSCHF's conjecture that Vans "would never produce shoes even remotely like the Wavy Baby sneakers" is inaccurate. See Rosendahl Reply Decl. ¶¶ 14-17.
[2] *See* Rosendahl Reply Decl. ¶¶ 3-10.

- "I legit thought Wavy Baby was a design by Vans"

- "Wait these aren't Vans?"

- "I woulda bet money they were Vans"

- "I thought these were wavy vans!!!"

- "I thought this was an official collab"

In view of this clear evidence of actual confusion,[3] MSCHF's claim that "no reasonable consumer . . . would conclude that Wavy Baby is anything but an exaggerated artwork by someone other than Vans" rings hollow. Opp. Br. at 12-13; *see also* Supp. Opp. Br. at 2.

MSCHF attempts to divert attention from the evidence of confusion by claiming that "confusion affecting purchasing decisions…is required to satisfy the actual-confusion *Polaroid* factor." Opp. Br. at 19. This is not true. "The Lanham Act protects against several types of consumer confusion, including point-of-sale confusion, initial interest confusion, and post-sale confusion." *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, n. 2 (2d. Cir. 2005) (internal citations omitted). Notably, MSCHF expects the Wavy Baby shoes to be worn on red carpets and traded in secondary markets (Wiesner Decl., Dkt. 17, ¶ 77; Whaley Decl., Dkt. 18, ¶ 18), meaning post-sale confusion is likely to continue, and even worsen over time. Indeed, Vans shoes are sold on all four of the sneaker resale websites noted by MSCHF as offering the Wavy Baby. *See* Rosendahl Reply Decl. ¶¶ 22-23.

The substantial evidence of actual consumer confusion should be dispositive here.

### 2. *Vans' Marks and Trade Dress Rights Are Strong (Factor One)*

MSCHF acknowledges—as it must—that Vans is widely recognized for its iconic Old

---

[3] Multiple courts in the Second Circuit have recognized social media commentary as evidence of actual confusion. *See, e.g., Hope Organics LLC v. Preggo Leggings LLC*, No. 21-CV-2416-TMR, 2021 WL 5919367, at *8 (S.D.N.Y. Dec. 15, 2021); *Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 378-79 (S.D.N.Y. 2018)..

Skool shoes. *See, e.g.*, Opp. Br. at 13 ("The Vans Old Skool marks are [] iconic…"); *see also id.* at 5 (noting Vans' Old Skool is "*the* classic skate shoe"). Nor does this strength bolster MSCHF's case. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) ("We reject [defendant's] second argument, however, that the particularly strong Starbucks Marks should 'weigh…against the likelihood of confusion.'") (citations omitted). MSCHF then pivots, claiming that Vans' marks are weak due to the crowded shoe market. Opp. Br. at 14. Vans' strong evidence of secondary meaning, and MSCHF's decision to infringe, rebuts this assertion. *See* Opening Br., Dkt. 12-1 at 17-18; Regan Decl., Dkt. 12-4 ¶¶ 8, 22-23, Exs. 2-7; Callahan Decl., Dkt. 12-7 ¶ 7; Wimmer Decl., Dkt. 12-2 ¶ 14, Ex. 5.

### 3. *The Wavy Baby Is Highly Similar to the Asserted Marks (Factor Two)*

MSCHF admits that "Wavy Baby reminds consumers of Vans' Old Skool sneakers" but also argues "*Wavy Baby* does not directly reproduce *any* of Vans' alleged trademarks." Opp. Br. at 14. This claim is questionable at best. For example, the waffle sole of the Wavy Baby is a colorable imitation, if not a direct reproduction, of Vans' trademarks.[4]

| Vans' Trademark | Vans' Old Skool | MSCHF's Wavy Baby |
|---|---|---|
|  |  |  |

Further, the test for similarity of the marks does not require precise duplication. *Malletier*, 426 F.3d at 538. MSCHF intended to copy the Vans trademarks and trade dress, and it succeeded.

---

[4] Vans' Waffle Sole is protected by Trademark Reg. Nos. 1,244,537; 2,830,071; 4,623,568; and 5,418,305.

3

### 4.   *MSCHF Sells Identical Products to Overlapping Consumers (Factor Three)*

MSCHF contests the proximity of Vans' Old Skool shoes and the Wavy Baby by claiming the latter are "difficult to walk in…let alone skate in" and "cannot safely be worn to walk down stairs." Opp. Br. at 17; *see also id.* at 6. These claims are contradicted by MSCHF's own declarations about its efforts to make the shoe functional, its advertising which depicts people skating in the shoes, and statements made by collaborator Michael Stevenson (aka "Tyga"):

- **MSCHF**: "Metal plates were placed in the sole, as well as the plastic bridge, to provide support." Wiesner Decl., Dkt. 17 at ¶ 34.

- **Tyga**: "It took like nine months. It's like eight, nine different tries…But how do you make it wavy and able to walk straight and functional….We had to test it out with people skating, you know what I'm saying?" *See* Rosendahl Reply Decl. ¶ 12; *see also* Rosendahl Reply Decl. ¶ 13, Ex. 7.

MSCHF also misses the mark with respect to marketing channels, emphasizing the traditional retail outlets that carry Vans' shoes while ignoring Vans' online sales. *See* Mot. at 21. Because the relevant products are in the same market, are sold through the same channels, and target overlapping consumers, this factor favors Vans.

### 5.   *MSCHF Has Acted in Bad Faith (Factor Six)*

MSCHF admits it intentionally adopted the same features as the OLD SKOOL Trade Dress. *See, e.g.*, Opp. Br. at 5 (Vans' Old Skool was the "cultural and physical anchor when creating [the Wavy Baby]"); *id.* at 15 (acknowledging MSCHF used "the Old Skool marks for inspiration"). Manufacturing and selling over 4,300 pairs of shoes that brazenly imitate Vans' most iconic trade dress *for commercial profit* is not artistic expression, it is trademark infringement. There is no justifiable basis for MSCHF's use of *any* of Vans' protected marks, let alone every aspect of the OLD SKOOL Trade Dress on a mass-produced shoe. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206 (2d Cir. 1979). MSCHF's motive

is clear: to profit off of the goodwill embodied in Vans' intellectual property through its hyped-up, publicity-seeking "drops."

### 6. *MSCHF's Infringing Shoes Are of Questionable Quality (Factor Seven)*

Notably absent from MSCHF's Opposition is any rebuttal to concerns over the unknown quality of the Wavy Baby shoes. Since their release on April 18, 2022, the questionable quality of MSCHF's shoes has become apparent, for example, in the imperfections plainly visible in Wavy Baby reviews. *See* Rosendahl Reply Decl. ¶ 18. Because association with poor quality (and potentially unsafe) shoes threatens to tarnish Vans' reputation, this factor favors Vans.

### 7. *Purchasers of Footwear are Unlikely to Exercise Significant Care (Factor Eight)*

MSCHF counters with two arguments that consumers exercise care, but each fails. First, MSCHF claims that individuals who purchase the Wavy Baby are "sophisticated" consumers who are "attuned to subtle differences" and are therefore "unlikely to believe the Wavy Baby was produced by or endorsed by Vans." Opp. Br. at 16; *see also* Anand Decl.[5], Dkt. 23, ¶¶ 4, 42. However, there is no evidentiary support for this opinion, and the actual confusion evidence demonstrates that these purchasers are in fact likely to believe that the Wavy Baby was endorsed by Vans. *See supra*, Section II.A.1. Moreover, the relevant population is consumers generally, not merely Wavy Baby purchasers. *See Virgin Enters., Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003). Purchasers of shoes are unlikely to use a high degree of care, so this factor favors Vans.

### B. The *Rogers* Test Does Not Apply to an Infringing Mass-Produced Sneaker

The two-prong test for First Amendment protection set forth by the Second Circuit in *Rogers* was for "allegedly misleading titles" of "expressive" works. *Rogers v. Grimaldi*, 875 F.2d

---

[5] In addition to being factually incorrect, Mr. Anand's declaration is also inadmissible under *Daubert*, as he is unqualified to opine on consumer psychology and likelihood of confusion and offers no empirical data or reliable methodology in support of his claims.  Vans has separately moved to strike his declaration for these reasons.

994, 998-99 (2d Cir. 1989). The Court there explicitly recognized that it was the "expressive" purpose of a movie title that distinguished it from "the labeling of ordinary commercial products." *Id.* at 999. While the Second Circuit has since applied this test to other expressive works[6] it has never applied the *Rogers* test in the context of directly competing goods. Indeed, in the recent *My Other Bag* decision cited by MSCHF, which involved infringing canvas tote bags and Louis Vuitton trademarks, the district court and Second Circuit did not even mention, much less apply, the *Rogers* test. *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425 (S.D.N.Y. 2016), *aff'd*, 674 Fed. App'x 16 (2d Cir. 2016). Moreover, because virtually all fashion contains artistic elements, expanding the *Rogers* test to commercially sold competing products would require the court to weigh the artistic aims of the designer in every trademark or trade dress infringement case. This is not the law. Regardless of MSCHF's goals, by choosing to embody its "art" in the form of a mass-produced sneaker sold to the public, MSCHF subjects itself to the laws that govern ordinary commercial products. The *Rogers* test does not apply.

Even if *Rogers* did apply, First Amendment concerns do not outweigh the Lanham Act where the trademark use explicitly misleads as to the source or the content of the work. *Rogers v. Grimaldi*, 875 F.2d at 999. Here, MSCHF's advertising (in which it microwaves a Vans shoe to produce the Wavy Baby), its lack of any sort of disclaimer as to its lack of association with Vans, and its slavish use of every aspect of the Vans' branding (down to the packaging design), explicitly misleads the consumer into believing this is a genuine special edition Vans OLD SKOOL. The evidence of actual confusion confirms this impression. A product that creates source confusion fails the *Rogers* test and is not protected by the First Amendment.

---

[6] *See, e.g.*, *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing*, 886 F.2d 490 (2d Cir. 1989) (applying *Rogers* to literary work and holding the Rogers test was generally applicable to "works of artistic expression").

### C.      The Wavy Baby Shoes Do Not Meet the Test for a Parody

Nor is the Wavy Baby a permissible "parody." When used on a competing product, "parodic use is sharply limited." *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999). "A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is not the original and is instead a parody." *Cliffs Notes, Inc.*, 886 F.2d at 494. "The latter message 'must not only differentiate the alleged parody from the original but must also communicate some articulable element of satire, ridicule, joking, or amusement.'" *My Other Bag, Inc.*, 156 F. Supp. 3d at 434–35 (citation omitted). When these requirements are met, "a parody clearly indicates to the ordinary observer 'that the defendant is not connected in any way with the owner of the target trademark.'" *Id.* at 435 (quoting 6 McCarthy on Trademarks and Unfair Competition § 31:153 (4th ed.). A true parody "comments on" rather than merely copies, the original trademark, *Harley Davidson, Inc.*, 164 F.3d at 813, and thus is inherently non-confusing.

The Wavy Baby is not a "parody" under this (or any other) definition. Notably, collaborations are common in the sneaker industry, and there is nothing in the Wavy Baby itself, or the accompanying advertising, that conveys that this is not an authorized Vans collaboration. Nor does the mark "Wavy" parody or comment on Vans' WAYVEE trademark – it is a simple imitation. Therefore, the Wavy Baby fails to convey the first necessary message of a parody – that it is NOT an authorized version of the Vans OLD SKOOL.

Nor does the Wavy Baby meet the second requirement of a parody, because its use of the Vans' trademarks and trade dress does not "communicate some articulable element of satire, ridicule, joking or amusement." *My Other Bag, Inc.*, 156 F. Supp. 3d at 434–35. If there was an articulable joke, MSCHF and its counsel would not have spent multiple declarations "explaining" the artistic meaning of the shoes. *E.g.*, Whaley Decl. ¶¶ 29-44; Wiesner Decl. ¶¶ 47-59. For a true parody, the joke would be inherent in how the marks were used, as in "Timmy Holedigger" pet

7

perfume. *See Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 415-16 (S.D.N.Y. 2002). There is no legal authority that an altered version of a famous trade dress, with no inherent comment, is a parody.

This analysis is confirmed by the reaction of consumers to the Wavy Baby shoes. Accustomed to creative and unusual "collabs" between shoe companies and artists, the consuming public has assumed that the Wavy Baby is a limited-edition Vans OLD SKOOL, modified as part of a creative partnership. *See supra*, Section II.A.1. This is a logical assumption—Vans frequently collaborates with artists to offer special and unusual limited-edition versions of its classic designs. The extensive actual confusion evidence here both underscores that the Wavy Baby is not a parody and defeats any parody defense. *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314 (S.D.N.Y. 1989) (holding that "Dom Popignon" popcorn which parodied Dom Perignon champagne would still infringe if it created a likelihood of consumer confusion).

### D.    Vans Is Likely to Succeed on the Merits of Its Dilution Claim.

MSCHF does not dispute the fame of Vans' marks. Instead, MSCHF once argues that its parodic use *per se* precludes Vans' dilution claim, and that in any case, its use cannot possibly tarnish or blur Vans' famous marks. Opp. Br. at 19-21. But as detailed above, because MSCHF's infringement of Vans' famous marks is not a parody, its reliance on the parody defense again falls flat. In passing, MSCHF also suggests that dilution by tarnishment is unconstitutional. *Id.* at 20-21. Without any support, this argument fails. Moreover, Vans has also shown dilution by blurring, which does not implicate constitutional concerns.  Vans' dilution claims are likely to succeed.

### E.    Vans is Likely to Suffer Irreparable Harm

MSCHF claims that any irreparable harm to Vans is now "moot" because MSCHF released the Infringing Shoes and promises not to release additional shoes in the "current iteration." Supp. Opp. at 4-5. However, MSCHF's assurance that it will not sell any more of the Infringing Shoes

in their "current iteration" does nothing to address the irreparable harm attendant to the release and sale of other iterations.[7] *See Int'l Equity Investments, Inc. v. Opp. Equity Partners*, 2006 WL 1293281, at *1 (S.D.N.Y. May 10, 2006) (equitable decrees "may go beyond the specific misconduct in which a defendant engaged . . ."). Moreover, MSCHF's own declarant predicted that the Wavy Baby shoes will be sold extensively in secondary marketplaces, making ongoing sales (and Vans' ability to stop them) very much a live issue. *See* Whaley Decl. ¶ 18; Whaley Supp. Decl., Dkt. 22 ¶¶ 28-30, 37. Furthermore, Vans' motion also seeks other preliminary relief, including enjoining MSCHF from marketing, selling, or fulfilling orders for "colorable imitations or reconstructions" of the Infringing Shoes, or from using Vans' Asserted Marks in commerce. Dkt. 12. In addition, the Wavy Baby website and all of its associated advertising remain up, causing ongoing irreparable harm to Vans. Preliminary relief is therefore still justified.[8]

Unable to refute the presumption and evidence of irreparable harm, MSCHF cites the fact that Vans and MSCHF's pre-suit settlement discussions ***included*** monetary terms to argue that monetary damages must therefore compensate ***all*** of Vans' possible injuries. Even setting aside this egregious breach of Rule 408, MSCHF misses a key point—the settlement terms included both monetary ***and*** non-monetary terms that, if agreed to by the parties, would have put in place sufficient safeguards and requirements to maintain Vans' control over its goodwill and reputation. Silverstein Decl. ¶ 8. MSCHF's refusal to agree to non-monetary terms to prevent irreparable harm to Vans' reputation is precisely what necessitated Vans' instant motion for preliminary relief. *Id.* ¶ 9. To the extent they are even admissible, the pre-suit settlement discussions in fact demonstrate that monetary damages will not compensate Vans for its harm.

---

[7] Vans submits with this Reply Brief a revised Proposed Order, taking into account MSCHF's release of the Infringing Shoes. *See* Exhibit 1.

[8] MSCHF's reliance on legislative history to argue that its claimed parodic use "trumps the presumption" of harm to Vans is also unavailing. Opp. Br. at 22. There is no authority whatsoever that supports such an argument.

9

Further, MSCHF's assertion that "Vans even indicated that it was willing to meet with MSCHF in order to explore future collaborations between MSCHF and Vans" is a misstatement. Rather, it was MSCHF, not Vans, who communicated a desire to collaborate with Vans and asked that any settlement agreement include a commitment by Vans to meet with MSCHF. Silverstein Decl. ¶¶ 5-6. Vans neither proposed any such collaborations nor agreed to any definite collaborations with MSCHF in the future. *Id.* Remarkably, by proposing collaboration (and choosing to expose that discussion), MSCHF has undermined its entire argument and exposed itself as a commercial infringer who could have pursued permission or a license but chose not to. MSCHF has willfully deprived Vans of its right to control its reputation and choose its partners, which is classic irreparable harm.

### F. The Balance of Equities and Public Interest Tip Decidedly in Vans' Favor

MSCHF's arguments on the hardships it would allegedly suffer from an injunction are entirely inapposite. First, MSCHF's investment of time and money into infringing Vans' Asserted Marks does not tilt the equities in MSCHF's favor, otherwise any trademark infringement accompanied by an up-front investment would preclude injunctive relief. Second, MSCHF's claim that its First Amendment rights, and the public interest, will be harmed if it is not allowed to "comment on Vans" is belied by the record. MSCHF's stated goal is commenting on "consumerism in sneakerhead culture" in general, not on Vans in particular. *See, e.g.*, Opp. Br. at 1. Moreover, MSCHF now claims it will cease all infringing activity "pending the conclusion of this case." *See* Supp. Op. Br. at 4-5. This concession undermines any claim of alleged hardships to MSCHF from a preliminary injunction.

## III. CONCLUSION

For the reasons set forth above and in Vans' opening brief, Vans respectfully requests that the Court grant its Motion for a Temporary Restraining Order and Preliminary Injunction.

Dated:  April 22, 2022

Respectfully submitted,

**MCGUIREWOODS LLP**

 /s/ Tanya L. Greene
Phil A. Goldstein
Michael L. Simes
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel:  (212) 548-7013
Fax:  (212) 715-6260
pagoldstein@mcguirewoods.com
msimes@mcguirewoods.com

Tanya L. Greene (*pro hac vice*)
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071
Tel:  (213) 457-9879
Fax:  (213) 547-9899
tgreene@mcguirewoods.com

Lucy J. Wheatley (*pending pro hac vice*)
Matthew G. Rosendahl (*pending pro hac vice*)
800 East Canal Street
Richmond, VA 23219
Tel:  (804) 775-1000
Fax: (804) 698-2016
lwheatley@mcguirewoods.com
mrosendahl@mcguirewoods.com

Matthew W. Cornelia (*pending pro hac vice*)
2000 McKinney Ave., Suite 1400
Dallas, TX 75201
Tel:  (214) 932-6400
Fax:  (214) 932-6499
mcornelia@mcguirewoods.com

*Counsel for Plaintiffs*
*Vans, Inc. and VF Outdoor, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system on April 22, 2022.

*/s/ Tanya L. Greene*
Tanya L. Greene
