UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANS, INC. and VF OUTDOOR, LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>MSCHF PRODUCT STUDIO, INC.<br><br>　　　　　　Defendant. | Case No. 1:22-cv-02156-WFK-RML |

### PROPOSED BRIEF OF AMICI CURIAE INTELLECTUAL PROPERTY LAW PROFESSORS IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Rebecca Tushnet
rtushnet@law.harvard.edu
520 Hauser, Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02130
Telephone: 703-593-6759

*Attorney for Amici Curiae*

# TABLE OF CONTENTS

Statement of Interest of *Amici Curiae* .................................................................................. 1

Argument .................................................................................................................................. 1

   I.   Anti-Dilution Protection Is Unconstitutional......................................................................... 1

      A.   Dilution, Like Section 2(a)'s Disparagement Bar, Is Unconstitutionally Content- and Viewpoint-Based. ................................................................................................................. 3

      B.   The Government Lacks a Constitutionally Sufficient Interest in Banning Dilution......... 7

      C.   Dilution is Unconstitutionally Vague and Underinclusive. ........................................... 10

   II.   Conclusion ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) .................................................. 4, 7, 9

*Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011) .................................... 1, 9

*City of Austin v. Reagan National Advertising, LLC*, 2022 WL 1177494, 596 U. S. --- (2022) ....3

*Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) .......................................................12

*Cohen v. California*, 403 U.S. 15 (1971) ................................................................................. 10

*Consolidated Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 537 (1980) ...............................12

*E.S.S. Entm't 2000, Inc. v. Rockstar Studios, Inc.*, 547 F.3d 1095 (9th Cir. 2008) .................... 4, 5

*FCC v. League of Women Voters*, 468 U.S. 364 (1984) ..............................................................13

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999) .................................. 9

*Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173 (1999) ........................... 12-13

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) ....................................................................... 8

*Iancu v. Brunetti*, 139 S.Ct. 2294 (2019) ................................................................................. 5, 6

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007) .......... 4, 5

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ....................................................................... 2, 3, 5, 6, 7-8

*National Press Photographers Ass'n v. McCraw*, 2022 WL 939517 (W.D. Tex. Mar. 28, 2022) .3

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ........................................................................ 2

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) ...................................................................................... 2

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ................................................................... 3, 11-12

*Ringling Bros.-Barnum & Bailey Circus Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449 (4th Cir. 1999) ...............................................................................................11

*Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 585 F. Supp. 2d 815 (E.D. Va. 2008) ...................................................................................................... 8

*Snyder v. Phelps*, 562 U.S. 443 (2011) ....................................................................................... 8

*Starbucks Corp. v. Wolfe's Borough Coffee Inc.*, 588 F.3d 97 (2d Cir. 2009) ......................... 4, 11

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ..........................................10

*United States v. Alvarez*, 567 U.S. 706 (2012) ........................................................................9-10

*United States v. Mongol Nation*, 370 F. Supp. 3d 1090 (C.D. Cal. 2019) ...................................10

*United States v. Stevens*, 559 U.S. 460 (2010) .............................................................................. 1

*Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088 (9th Cir. 2010) .............................................11

*Wandering Dago, Inc. v. Destito*, 879 F.3d 20 (2d Cir. 2018) ..................................................5, 6

**Statutes**

15 U.S.C. § 1125 ................................................................................................................ 2, 4, 6, 12

15 U.S.C. § 1052..............................................................................................................................2

**Other**

Barton Beebe, The Suppressed Misappropriation Origins of Trademark Antidilution Law, in Rochelle Cooper Dreyfuss & Jane C. Ginsburg, Eds., Intellectual Property at the Edge: The Contested Contours of IP 59 (2013) ................................................................... 10-11

Barton Beebe et al., Testing for Trademark Dilution in Court and in the Lab, 86 U. Chi. L. Rev. 611 (2019) .........................................................................................................................9

Laura R. Bradford, Emotion, Dilution, and the Trademark Consumer, 23 Berkeley Tech. L.J. 1227, 1237 (2008) ............................................................................................................. 9

Dictionary.com................................................................................................................................5

Stacey L. Dogan, What Is Dilution Anyway?, 105 Mich. L. Rev. First Impressions 103 (2006) 11

Christine Haight Farley, Why We Are Confused About the Trademark Dilution Law, 16 Fordham Intell. Prop. Media & Ent. L.J. 1175 (2006) .......................................................11

Laura A. Heymann, Metabranding and Intermediation: A Response to Professor Fleischer, 12 Harv. Negot. L. Rev. 201, 218–19 (2007) ......................................................................... 4

Stacey L. Dogan & Mark A. Lemley, Parody as Brand, 47 U.C. Davis L. Rev. 473, 486 (2013) ............................................................................................................................................ 10

J. Thomas McCarthy, Dilution of a Trademark: European and United States Law Compared, 94 Trademark Rep. 1163 (2004) ...........................................................................................11

J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition (4th ed. 2011) .............11

Maureen Morrin & Jacob Jacoby, Trademark Dilution: Empirical Measures for an Elusive Concept, 19 J. Pub. Pol'y & Marketing 265 (2000) ........................................................... 9

Lisa P. Ramsey, Free Speech Challenges to Trademark Law After Matal v. Tam, 56 Hous. L. Rev. 401 (2018) ................................................................................................................ 5

Rebecca Tushnet, Gone in 60 Milliseconds: Trademark Law and Cognitive Science, 86 Tex. L. Rev. 507 (2008) ............................................................................................................ 9, 13

**STATEMENT OF INTEREST OF *AMICI CURIAE***

Amici, listed in the Appendix, are law professors who teach and have written extensively about trademark law and other intellectual property law subjects. Our sole interest in this case is in the orderly development of trademark law in a way that serves the public interest.[*]

**ARGUMENT**

**I.     Anti-Dilution Protection Is Unconstitutional**

Dilution is content- and viewpoint-based protection for famous trademarks that is unrelated to protecting against deception. It protects the powerful at the expense of the less powerful, serving no substantial government interest, and its exceptions make it fatally underinclusive. At its core, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010). Dilution fundamentally contradicts that principle, suppressing truthful, nonmisleading speech about famous trademarks—that is, only about trademarks that already have power to shape public discourse.

The Supreme Court has "emphatically rejected [the] 'startling and dangerous' proposition" that the government "could create new categories of unprotected speech by applying a 'simple balancing test' that weighs the value of a particular category of speech against its social costs and then punishes that category of speech if it fails the test." *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 792 (2011) (quoting *Stevens*, 559 U.S. at 470).

---

[*] Counsel for the parties did not author this brief in whole or in part. The parties have not contributed money intended to fund preparing or submitting the brief. No person other than Amici Curiae or their counsel contributed money to fund preparation or submission of this brief.

1

But dilution law, departing from the core consumer protection justification for trademark law, singles out a subset of nondeceptive speech for punishment.

Dilution by blurring is defined as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark, and tarnishment is "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark," 15 U.S.C. § 1125(c)(2)(B) & (C), even in the absence of confusion. Liability for dilution does not require proof of actual harm to the trademark owner, economic or otherwise. §1125(c)(1).

But the First Amendment constrains Congress's ability to restrict truthful, non-misleading speech—even commercial speech—that changes or might change public opinion about another entity.  As the Supreme Court explained:

> [A] State may choose to regulate price advertising in one industry but not in others, because the risk of fraud (one of the characteristics of commercial speech that justifies depriving it of full First Amendment protection) is in its view greater there. But a State may not prohibit only that commercial advertising that depicts men in a demeaning fashion.

*R.A.V. v. St. Paul*, 505 U.S. 377, 388-89 (1992) (citations omitted). Dilution claims, however, provide exactly this sort of protection for famous marks. Vans argues that dilution law allows it to prevent consumers from forming new associations with or opinions about it even in the absence of confusion.[1] This is not just content-based suppression of speech, it is viewpoint-based suppression of speech—the prime evil against which the First Amendment protects.

---

[1] Like defamation, dilution is subject to the constraints of the First Amendment because Congress has authorized one party to suppress another's speech, a power it would lack without state support. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964) ("It matters not that that law has been applied in a civil action …. The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised.") (citations omitted).

In *Matal v. Tam*, 137 S. Ct. 1744 (2017), the Supreme Court unanimously held that the Lanham Act's prohibition on registering disparaging trademarks, 15 U.S.C. §1052(a), constituted unconstitutional viewpoint discrimination, regardless of the distinction between commercial and noncommercial speech. Like the provision struck down in *Tam*, trademark law's anti-dilution provision creates a content- and viewpoint-based rule that applies to truthful, non-misleading speech. But whereas the disparagement bar insulated everyone from criticism, whether powerful or powerless, dilution protects only the famous, suppressing the speech of the comparatively powerless.

### A. Dilution, Like Section 2(a)'s Disparagement Bar, Is Unconstitutionally Content- and Viewpoint-Based.

#### 1. Dilution Is Content-Based.

In *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), the Court held that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 165.

Dilution is content-based because a defendant's commercial speech is unlawful only if its similarity to a famous mark causes association with that mark—requiring an evaulation of its content—and that association has the effect of harming the mark's reputation or diminishing its distinctiveness, which are speech-based effects rather than effects caused by noncommunicative elements of the accused use. *See, e.g.*, *City of Austin v. Reagan National Advertising, LLC*, 2022 WL 1177494, at *7, 596 U. S. --- (2022) ("[A] regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result."); *National Press Photographers Ass'n v. McCraw*, 2022 WL 939517, at *10 (W.D. Tex. Mar. 28, 2022) (finding regulation

3

content-based when enforcement requires inquiry "into the contents of the image to determine whether it is prohibited"; "it is the content of the image that determines its permissibility—the definition of a content-based restriction").

Justice Thomas has noted that the "asserted interest [in keeping] legal users of a product or service ignorant in order to manipulate their choices in the marketplace . . . is *per se* illegitimate and can no more justify regulation of 'commercial' speech than it can justify regulation of 'noncommercial' speech." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 518 (1996) (Thomas, J., concurring) (citations omitted). This point applies equally to legal protections for the reputation of a trademark. As Laura Heymann puts it: "A dilution action essentially argues . . . '[W]e have spent a lot of money and effort on telling consumers what they should think about our brand, and the defendant's activities have caused them to think something different.' . . . The brand owner, in other words, is claiming a right to the exclusive mental association with the brand in the minds of the public." Laura A. Heymann, *Metabranding and Intermediation: A Response to Professor Fleischer*, 12 Harv. Negot. L. Rev. 201, 218–19 (2007).

Dilution enacts a structural tilt against speakers with a new message—here, jokers and those who don't respect a famous brand's aura.

**2. Dilution Is Viewpoint-Based.**

Tarnishment claims single out a subset of uses of a famous mark based on the views expressed by those uses. Use of a mark tarnishes only when it "harms the reputation of the famous mark." 15 U.S.C. 1125(c)(2)(C). Meanwhile, nonconfusing uses that reinforce the dignity of a trademark are not subject to suppression. *See Starbucks Corp. v. Wolfe's Borough Coffee Inc.*, 588 F.3d 97, 111 (2d Cir. 2009); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 268 (4th Cir. 2007). That distinction is explicitly viewpoint-based: it restricts

negative, but not positive, depictions of famous marks. Like the disparagement bar, this is a "happy-talk" rule. *Tam*, 137 S. Ct. at 1765 (Alito, J., opinion of four Justices);[2] *id.* at 1751 (Kennedy, J., concurring) (viewpoint discriminatory to allow "a positive or benign mark but not a derogatory one"); *see also Iancu v. Brunetti*, 139 S.Ct. 2294, 2299 (2019) (holding §2(a)'s bar on registering "scandalous or immoral" trademarks unconstitutional because it "permits registration of marks that champion society's sense of rectitude and morality, but not marks that denigrate those concepts"); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 32 (2d Cir. 2018) ("mandating positivity" in trademarks is viewpoint-based even outside of registration context).

Blurring is also viewpoint-based, because it enables famous mark owners—but not other mark owners—to prohibit uses that express viewpoints that might lead the audience to think of the trademark as less unique, less important, or less famous. See *Tam*, 137 S. Ct. at 1766 ("The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses"; disapproval of a subset of messages within a category is "the essence of viewpoint discrimination") (Kennedy, J., concurring); Lisa P. Ramsey, Free Speech Challenges to Trademark Law After *Matal v. Tam*, 56 Hous. L. Rev. 401, 443-44 (2018) (noting that dilution does not conver uses that reinforce the existing meaning of the mark) (citing, *e.g.*, *Louis Vuitton*, 507 F.3d at 267 (rejecting dilution liability for parody because, "by making the famous mark an object of the parody, a successful parody might actually enhance the mark's distinctiveness by making it an icon.")). Dilution law allows the government to suppress

---

[2] Notably, "disparage" and "tarnish" have essentially the same meaning. *See* https://www.dictionary.com/browse/disparage ("to speak of or treat slightingly; depreciate; belittle/to bring reproach or discredit upon; lower the estimation of"); https://www.dictionary.com/browse/tarnish ("to diminish or destroy the purity of; stain; sully").

the junior user's expression if that message is inconsistent with the brand message conveyed by the senior user's mark, which is to say whether its viewpoint is consistent with that message.

The fact that §2(a) targeted disparagement was enough to make the provision viewpoint-based even though that provision was evenhanded in applying "equally to marks that damn Democrats and Republicans, capitalists and socialists, and those arrayed on both sides of every possible issue." *Tam*, 137 S. Ct. at 1763 (Alito, J., opinion of four Justices). By contrast, dilution claims provide special extra protection for "famous" marks, targeting one set of viewpoints specifically—those that "impair[] the distinctiveness" or "harm[] the reputation" of a *famous* mark. 15 U.S.C. § 1125(c)(2)(B) & (C). Tarnishing or blurring a nonfamous mark is fine: To those who have, more is given, tilting the marketplace of ideas in their favor.

Dilution claims also impose greater restrictions on speech than did the disparagement bar, since dilution claims enable owners of famous marks to completely suppress nonconfusing uses. *Cf. Brunetti*, 139 S.Ct. at 2303 (Roberts, J., concurring) (noting that denial of registration "does not affect the extent to which their owners may use them in commerce to identify goods. No speech is being restricted; no one is being punished. The owners of such marks are merely denied certain additional benefits associated with federal trademark registration.").

The fact that the audience's reaction determines whether a use is diluting also does not change the viewpoint-based nature of the rule. "The Government may not insulate a law from charges of viewpoint discrimination by tying censorship to the reaction of the speaker's audience. . . . Indeed, a speech burden based on audience reactions is simply government hostility and intervention in a different guise." *Tam*, 137 S. Ct. at 1766-67 (Alito, J., opinion of four Justices). And, as the Second Circuit has explicitly held, whether the speech is commercial or not is no matter where a ban is viewpoint-based. *Wandering Dago*, 879 F.3d at 39.

6

### B. The Government Lacks a Constitutionally Sufficient Interest in Banning Dilution.

Even under the assumption that MSCHF's speech is "commercial," dilution does not implicate the reason that commercial speech can be more readily regulated than political speech: the need to protect consumers from harm. *See 44 Liquomart*, 517 U.S. at 502 ("It is the State's interest in protecting consumers from commercial harms that provides the typical reason why commercial speech can be subject to greater governmental regulation than noncommercial speech.") (cleaned up); *cf. Tam*, 137 S. Ct. at 1767 (Kennedy, J., concurring) ("To the extent trademarks qualify as commercial speech, they are an example of why that term or category does not serve as a blanket exemption from the First Amendment's requirement of viewpoint neutrality.").

Trademark law is, in general, constitutional because it regulates false and misleading statements in commercial speech. *See* Ramsey, *supra*, at 429. But this justification "offers no support for dilution statutes," which are not limited to false or misleading speech. Mark A. Lemley & Eugene Volokh, *Freedom of Speech and Injunctions in Intellectual Property Cases*, 48 Duke L.J. 147, 221 n. 325 (1998).

Instead, the government's interest is in stabilizing the meaning of famous marks—preventing people from giving them new, nonconfusing meanings that would exist alongside the famous mark. This interest is the opposite of a legitimate government interest in regulating speech. Contesting meaning, in the absence of deception, is at the heart of a system of free expression.

*Tam* confirmed that the government lacks a substantial interest in suppressing a message merely out of fear that it might convince audiences to think less of a trademark, affecting the amount of attention and goodwill the trademark can command:

> The commercial market is well stocked with merchandise that disparages prominent figures and groups, and the line between commercial and non-commercial speech is not always clear, as this case illustrates. If affixing the commercial label permits the suppression of any speech that may lead to political or social "volatility," free speech would be endangered.

*Tam,* 137 S. Ct. at 1765 (Alito, J., opinion of four Justices).

In general, the government does not have an interest in fixing meaning or protecting reputations from non-factual, non-falsifiable claims. For example, the deliberate infliction of emotional distress on specific targets is regularly protected by the First Amendment.[3] An insult to reputation can be real—but so is the pain of seeing Nazis march, or protestors at one's child's funeral claiming that he deserved to die. When the harm sought to be avoided is change in third parties' opinions (as opposed to, for example, physical violence), defamation law has provided a detailed map of what the law may not suppress. Defamation requires a false or misleading statement of fact, even though derogatory opinions can cause harm, including economic harm.

The Supreme Court has held that even definable damage to a plaintiff is not enough to justify relief when a well-known plaintiff is insulted, but not defamed. *Hustler Magazine v. Falwell*, 485 U.S. 46, 51-53 (1988); *see also, e.g., Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 585 F. Supp. 2d 815, 820 (E.D. Va. 2008) ("[I]f a plaintiff seeks damages which are 'reputational' in nature, constitutional libel standards (i.e., falsity and actual malice) apply to the plaintiff's damage claims. To allow otherwise would be to countenance 'an

---

[3] *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (public speech on a matter of public concern "cannot be restricted simply because it is upsetting or arouses contempt. 'If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.' Indeed, 'the point of all speech protection . . . is to shield just those choices of content that in someone's eyes are misguided, or even hurtful.' ") (citations omitted).

end-run around First Amendment strictures.' . . . [T]he label of the claim is not dispositive …."

(quoting *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999))).

It is indeed possible that the free flux of meaning will change the relative economic positions of particular actors.[4] But, as the *Tam* Court made clear, that result is a good, not a bad, in a system that protects freedom of speech. Allowing audiences to choose from a variety of competing meanings, experiences, and opinions is generally a First Amendment value, not a harm to be avoided. As Laura Bradford has explained:

> Typically interlopers that evoke famous marks in advertising subtly reveal to consumers alternative understandings such as that some segment of the public thinks the brand is pretentious, a bad value, or simply over-exposed. Even if consumers process the new message only subconsciously, automatically, and involuntarily, as they do with much authorized brand advertising, a resulting increase in negative feelings about the dominant brand may well be welfare-enhancing and efficient.

Laura R. Bradford, *Emotion, Dilution, and the Trademark Consumer*, 23 Berkeley Tech. L.J. 1227, 1237 (2008) (footnote omitted).[5]

---

[4] Even if fixing meaning to favor current owners of famous trademarks were a legitimate interest, there is no good evidence that suppressing speech through dilution law can accomplish this. *See, e.g.*, Barton Beebe et al., Testing for Trademark Dilution in Court and in the Lab, 86 U. Chi. L. Rev. 611 (2019) (explaining the weaknesses of empirical claims about dilution); Rebecca Tushnet, Gone in 60 Milliseconds: Trademark Law and Cognitive Science, 86 Tex. L. Rev. 507, 526-46 (2008) (same). The Court in *Brown* rejected as insufficient a far more empirically developed claim about the causal relationship between violent video games and harm to youth. 564 U.S. at 799–800. Likewise, in *44 Liquormart*, the Court found a ban on truthful price advertising unconstitutional because there was no evidence that it would decrease consumption significantly. Dilution is also based on unacceptable "speculation and conjecture" that preventing nonconfusing use of trademarks in commercial speech would preserve famous marks' distinctiveness. 517 U.S. at 507.

[5] Again, the empirical evidence indicates that dilution protection is irrelevant to famous marks. *See, e.g.*, Maureen Morrin & Jacob Jacoby, Trademark Dilution: Empirical Measures for an Elusive Concept, 19 J. Pub. Pol'y & Marketing 265, 274 (2000) ("It appears that very strong brands are immune to dilution because their memory connections are so strong that it is difficult for consumers to alter them or create new ones with the same brand name."); *cf. United States v. Alvarez*, 567 U.S. 709, 726 (2012) ("The Government point[ed] to no evidence to support its

Commentary like MSCHF's, whether deemed commercial or not, has constitutional value. Stacey Dogan and Mark Lemley have identified the importance of brand-based humor as

> a valuable form of social commentary. Even more than non-commercial forms of parody, the subversive use of a parody as brand invites critical reflection on the role of brands in society and the extent to which we define ourselves by them. Brands that parody, in other words, offer a unique platform for expression and pose little threat to trademark law's core values.

Stacey L. Dogan & Mark A. Lemley, *Parody as Brand*, 47 U.C. Davis L. Rev. 473, 486 (2013) (footnotes omitted).

Although some may consider MSCHF's message "low-value," the Supreme Court has rejected the concept that outsiders' judgments of the worth of speech should control, outside narrow traditional categories. As that Court said, "we cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process." *Cohen v. California*, 403 U.S. 15, 26 (1971). This protection also includes symbols that have developed substantial meaning, as Vans alleges here. *See, e.g.*, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505–06 (1969); *United States v. Mongol Nation*, 370 F. Supp. 3d 1090, 1112 (C.D. Cal. 2019) (symbols—in that case, trademarks representing association with Mongol Nation—are First Amendment speech).

### C. Dilution is Unconstitutionally Vague and Underinclusive.

Courts and commentators routinely find dilution impossible to define. *See, e.g.*, Barton Beebe, The Suppressed Misappropriation Origins of Trademark Antidilution Law, in Rochelle Cooper Dreyfuss & Jane C. Ginsburg, Eds., Intellectual Property at the Edge: The Contested Contours of IP 59, 61 (2013) (despite an "enormous amount of scholarly commentary both in the

---

claim that the public's general perception of military awards is diluted by false claims such as those made by Alvarez.").

United States and abroad, not to mention two federal antidilution statutes, thirty-eight state antidilution statutes, and numerous foreign antidilution laws … the 'dauntingly elusive concept' of dilution remains essentially an enigma") (quoting Ringling Bros.-Barnum & Bailey Circus Combined Shows, Inc. v. Utah Div. of Travel Dev., 170 F.3d 449, 451 (4th Cir. 1999)); Stacey L. Dogan, What Is Dilution Anyway?, 105 Mich. L. Rev. First Impressions 103 (2006); Christine Haight Farley, Why We Are Confused About the Trademark Dilution Law, 16 Fordham Intell. Prop. Media & Ent. L.J. 1175, 1184 (2006) (discussing definitional challenges); J. Thomas McCarthy, Dilution of a Trademark: European and United States Law Compared, 94 Trademark Rep. 1163, 1163 (2004) ("No part of trademark law that I have encountered in my forty years of teaching and practicing IP law has created so much doctrinal puzzlement and judicial incomprehension as the concept of dilution."). The statutory factors for blurring do not even address the supposed consequence of blurring: diminished distinctiveness of the mark. They address only whether there will be *association*, not diminished distinctiveness resulting from any such association. The result is that courts must guess whether an association will cause the harm targeted by the statute. *Compare Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198 (2d Cir. 2013) (affirming finding that there was insufficient evidence distinctiveness was likely to be impaired by proven association); 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 24:120 (4th ed.2011) ("The fact that people 'associate' the accused mark with the famous mark does not in itself prove the likelihood of dilution by blurring."), *with Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1091-92 (9th Cir. 2010) (inferring likely dilution from association).

This kind of vagueness in application makes dilution's content discrimination even worse. "Limiting speech based on its 'topic' or 'subject' favors those who do not want to disturb

the status quo. Such regulations may interfere with democratic self-government and the search for truth." *Reed*, 576 U. S., at 174 (Alito, J., concurring) (quoting *Consolidated Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 537 (1980)). This is because "the responsibility for distinguishing between" permissible and impermissible content "carries with it the potential for invidious discrimination of disfavored subjects." *Cincinnati v. Discovery Network, Inc.*, 507 U. S. 410, 423–424, n.19 (1993). That danger grows when content-based distinctions are "by no means clear," giving more leeway for courts to punish disfavored speakers and ideas. *Id.*

In addition, dilution's plethora of exceptions—for all noncommercial speech and substantial amounts of commercial speech, including comparative advertising and commercial parody—mean that the remaining scope of dilution law is extremely underinclusive of the harm sought to be redressed. A large number of tarnishing and blurring uses that would have the same or greater effects on famous marks are not actionable. 15 U.S.C. § 1125(c)(3).

Such underinclusiveness renders regulations of commercial speech unconstititutional. In *Discovery Network*, for example, the Supreme Court invalidated a ban on news racks for commercial handbills. Though the city attempted to justify its ban on the ground that the news racks interfered with the safety and beauty of the public streets, it left so many noncommercial news racks unregulated that its ban was fatally underinclusive. 507 U.S. at 417–18; *see also, e.g.*, *Reed,* 576 U.S. at 171-72 (content-based regulations fail when their restrictions are significantly underinclusive of the government interests allegedly served); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999) (holding that a regulation of truthful commercial speech pervaded with exemptions and inconsistencies fails to directly advance a substantial government interest); *id.* at 193–94 ("Even [in] commercial speech cases, decisions that select among speakers conveying virtually identical messages are in serious tension with the principles

12

undergirding the First Amendment."); *FCC v. League of Women Voters*, 468 U.S. 364, 385 n.16 (1984) (noting that underinclusiveness of a regulation makes it unrelated to the asserted purpose, making the government interest in regulating insubstantial); Tushnet, *supra*, at 546–552 (citing evidence that the brain has no commercial use filter).

## II. <u>Conclusion</u>

Dilution law is the kind of paternalistic language policing that the Supreme Court has long condemned. The fear is that consumers may make "wrong" decisions because their opinion of or level of attention to a famous mark has changed. But, in the absence of falsity or deception, there is no "wrong" meaning of a trademark. It is for audiences themselves to make such decisions and choose their own values and interpretations.

The dilution cause of action is unconstitutional. It cannot be the basis for any liability.

DATED: April 25, 2022     <u>/s/ *Rebecca Tushnet*</u>
Rebecca Tushnet
rtushnet@law.harvard.edu
520 Hauser, Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02130
Telephone: 703-593-6759

Attorney for Amici Curiae IP Law Professors

# APPENDIX[6]

Ann Bartow
University of New Hampshire Franklin Pierce School of Law

Barton Beebe
NYU School of Law

Stacey Dogan
Boston University School of Law

Christine Haight Farley
American University-Washington College of Law

James Grimmelmann
Cornell Law School/Cornell Tech

Jessica Litman
University of Michigan Law School

Lisa Ramsey
UC San Diego School of Law

Jessica Silbey
Boston University School of Law

Christopher Sprigman
NYU School of Law

Rebecca Tushnet
Harvard Law School

---

[6] Institutional affiliations are provided solely for identification purposes.