# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

VANS, INC. and VF OUTDOOR, LLC,

                    Plaintiffs,

        v.

MSCHF PRODUCT STUDIO, INC.,

                   Defendant.

Case No. 1:22-cv-02156-WFK-RML

JURY TRIAL DEMANDED

Date of Service: May 27, 2022

## PLAINTIFFS VANS, INC. AND VF OUTDOOR, LLC'S
## REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
## <u>CONTEMPT</u>

Philip A. Goldstein
Michael L. Simes
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel:  (212) 548-2100
Fax:  (212) 548-2150
pagoldstein@mcguirewoods.com
msimes@mcguirewoods.com

Tanya L. Greene (*pro hac vice*)
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071
Tel:  (213) 457-9879
Fax:  (213) 547-9899
tgreene@mcguirewoods.com

Lucy J. Wheatley (*pro hac vice*)
800 East Canal Street
Richmond, VA 23219
Tel:  (804) 775-1000
Fax: (804) 698-2016
lwheatley@mcguirewoods.com

## **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 2

      A.     MSCHF's Narrative Confirms That It Failed to Stop Shipments of the Infringing
            Shoes. ..................................................................................................................... 2

      B.     MSCHF Did Not Diligently Comply with the Injunction ...................................... 6

      C.     Contempt Sanctions and an Award of Fees and Costs Are Appropriate ................ 8

III.   CONCLUSION ........................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aspira of New York, Inc. v. Bd. of Edu.*,
    423 F. Supp. 647 (S.D.N.Y. 1976) ..........................................................................6

*Casale v. Kelly*,
    710 F. Supp. 2d 347 (S.D.N.Y. 2010)......................................................................7

*Dell, Inc. v. Compudirect, Inc.*,
    316 Fed. App'x 32 (2d Cir. 2009)............................................................................9

*King v. Allied Vision, Ltd.*,
    65 F.3d 1051 (2d Cir. 1995)....................................................................................8

*New York State Nat'l Org. for Women v. Terry*,
    952 F. Supp. 1033 (S.D.N.Y. 1997)........................................................................9

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech.*,
    369 F.3d 645 (2d Cir. 2004)....................................................................................9

*Tacuri v. Nithun Constr. Co.*,
    No. 14-CV-02908-CBA-RER, 2019 WL 6914042 (E.D.N.Y. Dec. 19, 2019) ...................8, 9

**Other Authorities**

Fed. R. Evid. 602, 802 ...................................................................................................2

## I.      INTRODUCTION

MSCHF blatantly violated this Court's order banning it from shipping Infringing Shoes and far from absolving it, MSCHF's Opposition and supporting declaration proves this.  MSCHF does not dispute that the Court's Injunction (ECF No. 40) prohibiting it from fulfilling orders for the Infringing Shoes and requiring it to cancel and/or reverse incomplete orders was clear and unambiguous—which is the first element required to establish its contempt.  Instead, MSCHF argues that it *reasonably complied* with the Injunction by engaging in admittedly futile efforts to "re-route" 1,912 unfulfilled shipments of its infringing "Wavy Baby" shoes (the "Infringing Shoes") *after* they had already shipped.  Yet, MSCHF intentionally ignores the undeniable fact that the Infringing Shoes remained in a holding area under its reasonable control for almost *two weeks* after the Injunction issued.  During this period, MSCHF and its many affiliates in China could and should have instructed the operator of the holding area not to deliver the Infringing Shoes to MSCHF's carrier, DHL.  Put simply, all that MSCHF needed to do was instruct its affiliates to say "no" when DHL tried to pick up the Infringing Shoes.  MSCHF took no such action, instead releasing the Infringing Shoes to DHL and only attempting to re-route the shoes *after* they had shipped.  MSCHF's failure to take even obvious steps to prevent shipment of the Infringing Shoes was in clear violation of the Injunction, and a finding of contempt is therefore appropriate.

Moreover, contrary to MSCHF's arguments, coercive sanctions are still necessary to ensure MSCHF takes appropriate steps to prevent fulfillment of the remaining unfulfilled orders that it could have otherwise prevented from shipping.  And, at a minimum, Vans should receive its reasonable attorneys' fees and costs from bringing MSCHF's contemptuous conduct to the Court's

attention, as there is no dispute that MSCHF was aware of the Injunction before willfully ignoring the Court's commands.

Vans therefore respectfully requests that the Court grant its motion, find MSCHF in contempt of the Injunction, and issue coercive sanctions, fees, and costs against MSCHF.

## II.    ARGUMENT

### A.    MSCHF's Narrative Confirms That It Failed to Stop Shipments of the Infringing Shoes.

Although the Declaration of James Kernan (ECF No. 45), MSCHF's "Head of Footwear,"[1] attempts to establish MSCHF's supposedly "significant efforts" to stop and re-route the contemptuous shipments of its Infringing Shoes, MSCHF's narrative does just the opposite, instead confirming that it could have stopped the contemptuous shipments before any re-routing was needed.  Specifically, even accepting Mr. Kernan's Declaration at face value,[2] the timeline established by Mr. Kernan demonstrates that MSCHF had nearly two weeks following the Court's issuance of the Injunction to prevent almost 2,000 incomplete orders for the Infringing Shoes from shipping, but it instead released those orders to DHL for shipment.[3]  Such a blatant failure to take

---

[1] While Mr. Kernan refers to himself as a "Producer for the art collective's projects" (Kernan Decl., ECF 45 ¶ 1), his LinkedIn page and website confirm that he is MSCHF's "Head of Footwear," belying his attempt to cast his position as an artistic endeavor and confirming that MSCHF is indeed in the business of creating commercial footwear, including the Infringing Shoes.  *See* Greene Decl., Ex. E.

[2] Although Vans takes Mr. Kernan's Declaration at face value for purposes of its reply, Vans objects to the portions of Mr. Kernan's Declaration that are not based on his personal knowledge and/or based on hearsay, including, but not limited to, Mr. Kernan's declarations that: (1) MSCHF's affiliates and contractors, including Mr. Hanjia, Mr. Dong, Mr. Hu, LW12, Buku, Tax-io, or DHL made statements regarding actions they had taken or would take, to the extent those statements are introduced for the truth of the matters asserted therein, (Kernan Decl. ¶¶ 13, 17, 19, 21-22, 30-32, 34); or (2) an employee or affiliate undertook certain actions, to the extent Mr. Kernan lacks personal knowledge that the action was in fact taken, (Kernan Decl. ¶¶ 21, 24, 29, 30-32, 34).  *See* Fed. R. Evid. 602, 802.

[3] To assist the Court in understanding the timeline of events, Vans has created a demonstrative exhibit outlining the actions allegedly taken by MSCHF.  *See* Greene Decl., Ex. D.

2

reasonable and obvious actions to comply with the Injunction is more than sufficient to find MSCHF in contempt.

As Mr. Kernan explains, on April 18, 2022, MSCHF sold 4,306 pairs of its Infringing Shoes.   Kernan Decl., ECF 45 ¶ 6.   MSCHF relied on third-party partners to handle the manufacturing, shipping, and delivery of the Infringing Shoes, including LW12 LLC ("LW12"), which Mr. Kernan owns and advertises as a "fulfillment center . . . specializ[ing] in helping brands fulfill and ship products . . . ."[4]  *Id.* ¶ 7; Greene Decl., Ex. E.   As of April 18, 2022, LW12 had possession of 2,086 pairs of the Infringing Shoes at its New York warehouse, while the remaining 2,220 pairs remained in China in the possession of MSCHF's manufacturer, Qingyuan Hanjia Shoes Company Limited ("Hanjia").   Kernan Decl. ¶¶ 5, 8.

LW12 arranged for shipment of the Infringing Shoes remaining in China through a Utah-based company, Buku, and Buku's parent company, Tax-io, which has an account with DHL.[5]  *Id.* ¶ 9.  Through this arrangement, DHL was designated to pick up the Infringing Shoes from a "third-party holding area."  *Id.* ¶ 9.  MSCHF is suspiciously silent as to which entity had control over the "third-party holding area;" however, at a minimum, the operator of the holding area has a relationship with Hanjia, as evidenced by Mr. Hanjia's statements that it "'handed off'" the Infringing Shoes to the third-party holding company, as well as Buku and Tax-io, with whom MSCHF and LW12 coordinated to ship the Infringing Shoes from the holding area using Tax-io's DHL account.  *See id.* ¶¶ 9, 13.  Despite MSCHF's plans to ship all pairs of the Infringing Shoes

---

[4] Notably, Mr. Kernan does not describe his company as a fulfillment vendor for "artwork."
[5] Although MSCHF claims it has no contract with Tax-io, it does not deny that either it or LW12 had a business arrangement with MSCHF and that Tax-io took direction from both MSCHF and LW12, as evidenced by Tax-io's letter sent on behalf of LW12 and Mr. Kernan to DHL.  *See* Kernan Decl. ¶ 9, ex. 4; *see also id.* ¶ 30 (explaining that "MSCHF arranged (through LW12, which coordinated with Buku) to have Tax-io submit a letter to DHL . . . .").

on April 20, 2022, nearly 2,000 pairs of the Infringing Shoes remained in China as of that date. *Id.* ¶¶ 10-12.

On April 26, 2022—three days before the Injunction issued—Mr. Kernan contacted Mr. Hanjia to inquire about the possibility of halting shipments of the remaining 1,912 pairs of the Infringing Shoes located in China.  Mr. Hanjia responded that the shoes had left its factory and that Hanjia could not stop the shipments.  Kernan Decl. ¶ 13, Ex. 2.  However, MSCHF did not ask whether the Infringing Shoes had left the third-party holding area, or the steps it could take to ensure DHL did not pick up the shipments from the holding area.  *See id.*  Nor did MSCHF attempt to contact the third-party holding area with which Hanjia, Buku, and/or Tax-io must have a relationship.  *See id.*  Meanwhile, on April 29, 2022, the Court issued the Injunction that, in relevant part, prohibits "[MSCHF] and . . . all other persons who are in active concert or participation with it . . . from fulfilling orders for the 'Wavy Baby' shoes and/or colorable imitations or reconstructions thereof," and required MSCHF to cancel and/or reverse any incomplete orders for the Infringing Shoes.  Injunction, ECF 40 at 16.  As demonstrated further below, at no point after the Court issued the Injunction did MSCHF go back to Mr. Hanjia, Buku or Tax-io and instruct that the shoes remain in the third-party holding area.

On the day the Injunction issued, 1,912 pairs of Infringing Shoes remained at the holding area in China.  The Infringing Shoes were held there for nearly two weeks, until at least May 11, 2022.  *See* Kernan Decl. ¶¶ 12-13 (stating on April 26, 2022, that the remaining pairs had been handed off to the third-party holding area); *id.* ¶ 28 (stating that the remaining pairs started shipping through DHL's network on May 11, 2022); *see also* Greene Decl., Exs. A-C (showing that DHL did not pick up the Infringing Shoes until May 11, 2022).  Yet, despite the almost two-week period between the issuance of the Court's Injunction and the shipment of the 1,912 remaining pairs of

4

Infringing Shoes, MSCHF at no point coordinated with LW12 (an entity that Mr. Kernan himself owns), Buku, Tax-io, Hanjia, or its other contacts in China, including its self-described "vendor management" contractors David Dong and Robert Hu, to prevent the remaining pairs from leaving the holding area and entering the DHL system.

Instead, after the Injunction issued, MSCHF emailed Mr. Dong and Mr. Hu and asked them very generally to "'cease all development and other work related to the Wavy Baby sneakers,'" citing unenumerated "'legal reasons.'"  Kernan Decl. ¶ 17 (quoting *id.*, ex. 3).  And although MSCHF emailed its contact at LW12, it never claims to have instructed LW12, Buku, Tax-io, or any other contact in China to stop the remaining pairs of shoes from leaving their holding area, despite MSCHF's repeated confirmation between April 29 and May 11, 2022, that the remaining pairs had not yet shipped.  *See id.* ¶¶ 22 (stating that on May 6, 2022, MSCHF knew the shoes "had not left China through the global DHL network"), 23 (stating that on May 7, 2022, MSCHF learned that "the packages had not departed China through the global DHL network"), 26 (stating that on May 9, 2022, MSCHF checked DHL's tracking system and confirmed the shoes still had not shipped), 28 (stating that on May 11, 2022, MSCHF checked DHL's tracking system again "and saw that the China-based units had shown movement in DHL's tracking system").

MSCHF chose instead to sit on its knowledge that the Infringing Shoes had not yet shipped and instead of instructing its vendors to stop the shipments, it relied on a futile plan to re-route the shipments only after they were already in DHL's custody, which did not occur until May 11, 2022. *Id.* ¶ 28.  But by that time, it was too late, as MSCHF was all too aware from its communications with LW12 and DHL before the Infringing Shoes had left the holding area.  *See id.* ¶ 29 (confirming that on May 11, 2022, "MSCHF still did not have a firm answer from LW12 or DHL regarding the process for attempting the re-route the packages").  The next day, on May 12, 2022,

Vans filed its instant motion to find MSCHF in contempt after discovering evidence that MSCHF was continuing to fulfill orders for the Infringing Shoes well after the Court unambiguously prohibited such activity.  (ECF 42.)

Ultimately, despite MSCHF's knowledge of the Infringing Shoes' location for the nearly two-week period in which it could have easily stopped the shoes from leaving their holding area, MSCHF failed to halt the shipment of all 1,912 pairs of Infringing Shoes that were under its reasonable control, or the control of its affiliates, at the time the Injunction issued, save for a few pairs that remain undelivered.  *Id.* ¶ 35.  MSCHF's attempt to muddy the waters with a narrative of futile efforts to "re-route" shipments is belied by the record, which confirms that MSCHF had ample opportunity to comply with the Injunction but chose not to do so.  MSCHF's blatant violation of the Injunction justifies a finding of contempt and the imposition of sanctions.

### B.    MSCHF Did Not Diligently Comply with the Injunction

Although MSCHF claims that its efforts to fix a problem of its own making establishes its "substantial compliance" with the Court's Injunction, their own record proves otherwise. MSCHF's recount of its failed efforts to re-route the Infringing Shoes confirms that the reasonable and prudent thing to do would have been to stop DHL from taking custody of the Infringing Shoes in the first place, which MSCHF never instructed its vendors to do.  A finding of contempt is therefore appropriate.

Although perfect compliance with an order is not required, "[t]he court is obliged . . . to require substantial performance and due diligence."  *Aspira of New York, Inc. v. Bd. of Edu.*, 423 F. Supp. 647, 651 (S.D.N.Y. 1976).  Substantial performance requires that a party "exercise their power and authority so that those they control[] w[ill] proceed promptly and in good faith to accomplish the tasks commanded by the [order]."  *Id.*  "'Reasonable diligence, at the very least, requires a party to develop and execute reasonable methods of compliance,'" and "'[i]t need not

6

be established that the violation [of an order] was willful.'"  *Casale v. Kelly*, 710 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) (citations omitted).

Here, MSCHF did not exercise its power and authority to ensure that those under its reasonable control complied with the Injunction.  MSCHF had nearly two weeks following the Injunction to coordinate with the parties under its control, or in active concert with it, to prevent the Infringing Shoes from leaving the holding area, including, at a minimum: (a) its fulfillment vendor, FW12—a party owned by Mr. Kernan; (b) FW12's shipment partners, Buku and Tax-io; (c) MSCHF's manufacturer, Hanjia; and/or (d) MSCHF's vendor management contractors located in China, Mr. Dong and Mr. Hu.  Yet, MSCHF relied only on vague emails to LW12, Mr. Dong, and Mr. Hu that they should halt all future activity related to the Infringing Shoes, without taking the necessary—and obvious—step of coordinating with those parties to prevent DHL from picking up the Infringing Shoes that it knew, as of April 29, were in a holding area and had not yet shipped. MSCHF needed only to instruct its affiliates to say "no" to DHL, but it chose not to.

Moreover, to remove any doubt as to MSCHF's ability to reasonably comply with the Injunction, MSCHF repeatedly confirmed over the two-week, pre-shipment period that DHL had not yet picked up the Infringing Shoes from the holding area.  *See* Kernan Decl. ¶¶ 22-23, 26, 28; Greene Decl., Ex. D.  Nonetheless, despite its knowledge of the Infringing Shoes' location and that they had not yet shipped, MSCHF took no affirmative steps to comply with the unequivocal commands in the Injunction and prevent the Infringing Shoes from entering DHL's custody.  It is therefore clear that MSCHF failed to develop and execute reasonable methods of compliance with the Injunction.

MSCHF's claim that there is insufficient proof that it violated the Injunction likewise rings hollow, as MSCHF's own declarant establishes the necessary facts to support a finding of

contempt.  As detailed above, Mr. Kernan's narrative confirms Vans' evidence showing that MSCHF allowed the fulfillment of incomplete orders for the Infringing Shoes to proceed nearly two weeks after the Injunction forbidding such fulfillment had issued.  Additionally, Mr. Kernan's declaration establishes that MSCHF's violation of the Injunction was not limited to only the three orders cited in Vans' motion but extended to all 1,912 pairs of Infringing Shoes—almost half of the total sold by MSCHF—that remained in the reasonable control of MSCHF's affiliates until at least May 11, 2022.  *See* Kernan Decl. ¶¶ 12, 28.

Simply put, MSCHF failed to take even the most obvious steps to conform its conduct, and the conduct of those in its control, to the Court's unambiguous commands.  MSCHF's failure to act reasonably and diligently to comply with the Injunction is more than sufficient to establish its violation of the Injunction, and MSCHF should therefore be found in contempt.

## C.    Contempt Sanctions and an Award of Fees and Costs Are Appropriate

MSCHF attempts to avoid any sanctions for its contemptuous conduct by characterizing Vans' request for sanctions as "punitive."  However, MSCHF's conduct confirms that both coercive sanctions and an award of Vans' attorneys' fees and costs are not only appropriate but necessary to force MSCHF's future compliance with the Injunction and to reimburse Vans for the cost of investigating and prosecuting MSCHF's willful violation of the Court's authority.

"A civil contempt sanction should either seek to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance."  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995) (quotations and citation omitted).  "When imposing a coercive fine, courts consider (1) 'the character and magnitude of the harm threatened by continued contumacy,' (2) 'the probable effectiveness of any suggested sanction in bringing about [compliance],' and (3) 'the contemnor's ability to pay.'"  *See Tacuri v. Nithun Constr. Co.*, No. 14-CV-02908-CBA-RER, 2019 WL

6914042, at *3 (E.D.N.Y. Dec. 19, 2019) (Amon, J.) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech.*, 369 F.3d 645, 657-58 (2d Cir. 2004)).  Moreover, when "the 'contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply,'" the movant's attorneys' fees and costs related to the contemnor's conduct are an appropriate remedy.  *See id.* at *2 (quoting *New York State Nat'l Org. for Women v. Terry*, 952 F. Supp. 1033, 1044 (S.D.N.Y. 1997)).  Here, both coercive sanctions and an award of Vans' fees and costs are justified.

First, Mr. Kernan's Declaration confirms that several orders for the Infringing Shoes remain unfulfilled and have not yet been completed.  *See* Kernan Decl. ¶ 35.  Considering MSCHF's refusal to take reasonable steps to prevent fulfillment of orders for the Infringing Shoes, a per diem fine remaining in effect until MSCHF confirms that all remaining orders have been cancelled or reversed is necessary and appropriate to ensure that MSCHF acts diligently to comply with the Injunction and prevent further irreparable harm to Vans.  And although the Court must consider MSCHF's ability to pay any fine, "the burden is on the contemnor to raise such a defense," which MSCHF has not raised here.  *Tacuri*, 2019 WL 6914042, at *3 (citing *Dell, Inc. v. Compudirect, Inc.*, 316 Fed. App'x 32, 34 (2d Cir. 2009)).  Mr. Kernan's Declaration also confirms that MSCHF is not a mom-and-pop artistic collective, but a highly sophisticated enterprise that is willing to ignore the Court's instructions in its own financial interest, unless a cost is imposed.  A coercive fine of at least $5,000 per day is therefore appropriate to bring MSCHF into compliance with the Court's Injunction.

Second, regardless of whether the Court imposes a coercive fine, the Court should award Vans its attorneys' fees and costs for investigating and bringing MSCHF's contempt to the Court's attention.  Indeed, MSCHF does not dispute that it was aware of the Injunction the moment it

9

issued, and that the Injunction unambiguously requires MSCHF and its affiliates to halt the fulfillment of any incomplete orders.  Nor has MSCHF sought to modify the provisions of the Injunction that it has violated.  MSCHF's knowing and willful disregard of the Injunction's unequivocal instructions therefore justifies an award to Vans of the attorneys' fees and costs associated with investigating and prosecuting the instant motion, which Vans can establish following resolution of the motion.

## III.   CONCLUSION

For the reasons set forth above and in Vans' opening letter, Vans respectfully requests that the Court grant its Motion for Contempt and issue an order finding MSCHF in contempt of the Court's Injunction (ECF No. 40), imposing coercive sanctions, and awarding Vans its attorneys' fees and costs, to be established following resolution of its motion.

Dated:  May 27, 2022                          Respectfully submitted,

                                              McGuireWoods LLP

                                              /s/ Tanya L. Greene
                                              Tanya L. Greene (*pro hac vice*)
                                              Wells Fargo Center, South Tower
                                              355 S. Grand Ave., Suite 4200
                                              Los Angeles, CA 90071
                                              Tel:  (213) 457-9879
                                              Fax:  (213) 547-9899
                                              tgreene@mcguirewoods.com

                                              Philip A. Goldstein
                                              Michael L. Simes
                                              1251 Avenue of the Americas, 20th Floor
                                              New York, NY 10020
                                              Tel:  (212) 548-2100
                                              Fax:  (212) 548-2150
                                              pagoldstein@mcguirewoods.com
                                              msimes@mcguirewoods.com

                                              Lucy J. Wheatley (*pro hac vice*)
                                              800 East Canal Street
                                              Richmond, VA 23219
                                              Tel:  (804) 775-1000
                                              Fax: (804) 698-2016
                                              lwheatley@mcguirewoods.com

                                              *Counsel for Plaintiffs*
                                              *Vans, Inc. and VF Outdoor, LLC*

11