UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
VANS, INC. and VF OUTDOOR, LLC :
:
      Plaintiffs, :
:
  -against- : 22-cv-02156-WFK-RML
:
MSCHF PRODUCT STUDIOS, INC., :
:
      Defendant :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# DECLARATION OF JOHN F. BELCASTER
# REGARDING DEFENDANT'S COMPLIANCE WITH APRIL 29, 2022 DECISION & ORDER

I, John F. Belcaster, declare as follows:

1. I am an attorney and General Counsel for Defendant MSCHF Product Studios, Inc. ("MSCHF").

2. I make this declaration on personal knowledge and based upon reports from MSCHF employees on whom I regularly rely, in accordance with this Court's April 29, 2022 order (hereinafter the "Order") granting the motion for preliminary injunction filed by Vans, Inc. and VF Outdoor, LLC (hereinafter "Vans") (*see* Dkt. #40), to report to the Court regarding MSCHF's compliance with the Order.

3. The Order was issued at 6:22pm Friday, April 29, 2022. I received the Order within an hour after the Order was issued. The Order contained five directives for MSCHF: (i) fulfillment restraint; (ii) advertising, marketing, promotion, sales, distribution, and order-taking restraint (hereinafter "Promotion & Sales Restraint"); (iii)

order cancellation and reversal requirement ("Order Cancellation Requirement"); (iv) revenue escrow requirement; (v) compliance report submission requirement.

4. Upon receipt of the Order, and within one hour of its entry, I sent a copy of the Order to the following individuals: MSCHF CEO Gabriel Whaley; MSCHF COO Stephen Tetreault; MSCHF CRO Daniel Greenberg; MSCHF's Co-Chief Creative Officers Kevin Wiesner and Lukas Bentel; MSCHF's Outside Acting-CFO Ray Cheng; MSCHF's Head of Production Craig von Wiederhold; and MSCHF Producer James Kernan (collectively for the purposes of this affidavit, the "Management Team"); and Tyga's legal and business team. I also immediately issued a series of compliance directives to the Management Team, and scheduled a meeting of the team to discuss, the next morning, the Order and implement a compliance plan.

**I.    The Fulfillment Restraint and Order Cancellation Requirement**

5. The Order prohibited "Defendants and its officers, agents, employees, attorneys, and all other persons who are in active concert or participation with Defendant . . . from fulfilling orders for the 'Wavy Baby' shoes and/or colorable imitations or reconstructions thereof (the 'Prohibited Shoes')." The Order also directed MSCHF to "reverse and/or cancel any orders for the Prohibited Shoes that have been placed as of the time of this Order."

6. To comply with these provisions, within one hour of the Order's entry, I directed Mr. Kernan to cease any fulfillment—if any non-fulfillment still existed—of *Wavy Baby* orders. In addition, that same evening, I directed Mr. Kernan to ensure that no new orders would be taken for any future sales of *Wavy Baby.* No new orders have been taken since the Order's entry.

7. That same evening, April 29, 2022, Mr. Kernan, in conformance with my directive, notified MSCHF's contacts with the factory in China and LW12 to stop any and all work related to the Prohibited Shoes, including distribution of *Wavy Baby* works.

8. In addition, that same evening, MSCHF—through its service provider LW12, and LW12 through its service providers—began to undertake extensive and protracted efforts to cancel or re-route all *Wavy Baby* orders that had not yet been delivered to purchasers.

9. As detailed in Mr. Kernan's declaration (See Dkt. #45), MSCHF lacked any legal right or practical ability to control the fulfillment of the orders once they left the factory with which MSCHF does business, including once they arrived at the third-party holding area from which DHL-China picked up the orders. Despite this fact and the fact that MSCHF was repeatedly told that cancelling or re-routing the orders would be impossible, MSCHF made extensive efforts to find any possible way to reverse and cancel any unfulfilled orders.

10. Starting April 29, 2022, Mr. Kernan led the efforts in working with MSCHF's logistical vendors and other third parties in an attempt to cancel and/or re-route all *Wavy Baby* orders that had not yet been delivered. These efforts included repeated and persistent inquires by MSCHF to its vendors, who were each directed not to further fulfill *Wavy Baby* orders, and DHL, who was asked to re-route the orders. MSCHF's extensive outreach since April 29 was aimed at causing fulfillment of *Wavy Baby* works to stop or to re-route the orders so that MSCHF could take custody or control over them, but those efforts were unsuccessful. (*See* Dkt. #45, Affidavit of James Kernan, ¶¶ 4–35).

11. Since Mr. Kernan filed his declaration on May 20, 2022, MSCHF has continued to attempt to cancel or re-route the unfulfilled orders that are in transit with DHL-America, through daily inquiries to LW12 (and, in turn, LW12's inquiries with its services providers working with DHL), in an attempt to prevent any unfulfilled orders from reaching purchasers. To date, those efforts have unfortunately been unsuccessful.

12. As of May 26, 2022 at 2:03pm ET, of the China-based *Wavy Baby* units for which MSCHF had attempted to forestall fulfillment, 1,802 pieces shipping from China have been delivered to purchasers; 0 are out for delivery; 6 are in transit; 0 failed delivery attempts occurred, and 8 pieces are in an exception state (either because of a re-routing hold or for some other unspecified reason).

13. MSCHF intends to continue its ongoing efforts to prevent delivery of the undelivered *Wavy Baby* units unless and until all units are delivered to purchasers.

**II. The Promotion and Sales Restraint**

14. The Order prohibits MSCHF "and its officers, agents, representatives, privies, principals, directors, shareholders, managing agents, owners, licensees, distributors, servants, attorneys, employees, affiliates, subsidiaries, parents, successors, and assigns, and all other persons who are in active concert or participation with any of them . . . from advertising, marketing, promoting, offering to sell, selling, distributing and/or taking orders for the Prohibited Shoes."

15. Within one hour of the Order's entry, I directed Mr. Greenberg, who, among other duties, leads marketing and promotion for MSCHF, to cease (and inform his team to cease) all advertising, marketing, and promotion activity associated with *Wavy*

4

*Baby*. Mr. Greenberg, in turn, directed the marketing and promotion team to refrain from any prospective advertising, marketing, and promotion activity of *Wavy Baby*.

16. At my direction, on April 29, 2022, MSCHF began to remove all internet posts and other references to the Prohibited Shoes, including all references from MSCHF's website, the MSCHF Sneakers App, and MSCHF's Twitter and Instagram profiles. This process was complete by April 30, 2022.

17. I further confirmed within MSCHF that there were no other avenues of potential advertising, promoting, offering to sell, or selling of the Prohibited Shoes, and that no additional orders since April 18, 2022 had been taken.

18. In addition, at my direction, MSCHF contacted its collaborator, Tyga, on the evening of April 29, 2022, and disclosed the Promotion and Sales Restraint. I also notified Tyga's legal team of the Order that same evening. The next morning, Tyga's legal team confirmed receipt of my, and the Court's, stand-down instructions.

19. At my direction, on April 29, 2022, MSCHF employee Stephen Tetreault notified every employee at MSCHF that they were not permitted to promote the *Wavy Baby* project.

20. Since April 29, 2022, MSCHF has not advertised, promoted, sold, or offered to sell any *Wavy Baby* piece. Nor has MSCHF distributed, or caused to be distributed, any *Wavy Baby* pieces.

### III. Revenue Escrow Requirement

21. The Order directs MSCHF that "for any order that cannot be reversed and/or canceled, Defendant must escrow any funds received from all orders taken to date for the Prohibited Shoes so that, if Vans prevails in this action, Defendant may return

funds to customers who ordered Defendant's Prohibited Shoes under the mistaken belief that Vans was the source of the shoes or otherwise approved or sponsored the shoes."

22. On April 29, 2022, MSCHF began the process of establishing an escrow arrangement for *Wavy Baby* gross revenue. MSCHF established a segregated account at JP Morgan Chase, and then began the transfer of *Wavy Baby* revenues from MSCHF's general business account to the newly opened account at Chase.

23. As of May 25, 2022, $947,320 – representing the total revenue from the sale of *Wavy Baby* (the "Escrow Fund") – has been placed into escrow with JP Morgan Chase.

24. As MSCHF continues its efforts to re-route the remaining handful of unfulfilled orders, the balance of the Escrow Fund may decrease if MSCHF refunds any purchasers in the event that their *Wavy Baby* works are not delivered.

**IV. Compliance Report Submission**

25. As its fifth directive, the Order requires MSCHF to file with the Court within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

26. In compliance with this directive, I have caused to be filed, under pain of perjury, this Declaration outlining all steps taken by MSCHF to comply and remain in compliance with the Court's April 29, 2022 Order.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 27, 2022 in Oak Park, IL.

_____
John F. Belcaster