| | |
|---|---|
| VANS, INC. and VF OUTDOOR, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MSCHF PRODUCT STUDIO, INC., <br><br> Defendant. | Case No. 1:22-cv-02156-WFK-RML <br><br> JURY TRIAL DEMANDED <br><br> Date of Service: June 10, 2022 |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO PARTIALLY STAY PRELIMINARY INJUNCTION, REQUIRE PLAINTIFFS TO POST BOND, AND RESCIND ESCROW REQUIREMENT

Philip A. Goldstein
Michael L. Simes
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel: (212) 548-2100
Fax: (212) 548-2150
pagoldstein@mcguirewoods.com
msimes@mcguirewoods.com

Tanya L. Greene (*pro hac vice*)
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071
Tel: (213) 457-9879
Fax: (213) 547-9899
tgreene@mcguirewoods.com

Lucy J. Wheatley (*pro hac vice*)
Matthew G. Rosendahl (*pending pro hac*)
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 698-2016
lwheatley@mcguirewoods.com
mrosendahl@mcguirewoods.com

Matthew W. Cornelia (*pro hac vice*)
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel: (214) 932-6400
Fax: (214) 932-6499
mcornelia@mcguirewoods.com

*Counsel for Plaintiffs*
*Vans, Inc. and VF Outdoor, LLC*

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 1
II. RESPONSE TO MSCHF'S STATEMENT OF FACTS .................................... 1
III. ARGUMENT ........................................................................................................... 1
    A. Each Stay Factor Favors Denying MSCHF's Motion ........................................ 1
        i. MSCHF's Appeal is Destined to Fail ....................................................... 2
        ii. MSCHF Articulates No Actual or Immediate Irreparable Harm .............. 4
        iii. Vans Will Suffer Irreparable Harm if Any Portion of the TRO is Stayed ....................................................................................................... 7
        iv. Maintaining the TRO In Its Entirety is In the Public Interest ................... 7
    B. MSCHF's Bond And Escrow Arguments Are Both Procedurally Improper And Legally Erroneous ....................................................................................... 8
        i. The TRO's Escrow Requirement Is Fully Justified ................................. 9
        ii. The Court Was Not Required to Expressly Address Bond in the TRO ......................................................................................................... 10
        iii. MSCHF Fails to Satisfy Its Burden of Proof as to the Allegedly Appropriate Security ............................................................................... 11
        iv. Bond and Escrow Are Ancillary Issues With No Relation To The Enjoined Conduct Sought To Be Stayed ................................................ 12
IV. CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. U.S.*,
 509 U.S. 544 (1993) ................................................................................................4, 5

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
 598 F.3d 30 (2d Cir. 2010) ............................................................................................3

*CJ Prods. LLC v. Snuggly Plushez LLC*,
 809 F. Supp. 2d 127 (E.D.N.Y. 2011) ........................................................................12

*Clarkson Co. v. Shaheen*,
 544 F.2d 624 (2d Cir. 1976) ..................................................................................10, 11

*Corning Inc. v. PicVue Elecs., Ltd.*,
 365 F.3d 156 (2d Cir. 2004) ........................................................................................10

*Doctor's Assocs., Inc. v. Stuart*,
 85 F.3d 975 (2d Cir. 1996) ..........................................................................................11

*Green v. Dep't of Educ. of City of New York*,
 16 F.4th 1070 (2d Cir. 2021) .........................................................................................8

*Gucci Am., Inc. v. Weixing Li*,
 768 F.3d 122 (2d Cir. 2014) .....................................................................................9, 10

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
 239 F.3d 172 (2d Cir. 2001) ..........................................................................................5

*Nike, Inc. v. MSCHF Product Studio, Inc.*,
 No. 1:21-cv-01679-EK-PK (E.D.N.Y.) ......................................................................10

*Nken v. Holder*,
 556 U.S. 418 (2009) ..................................................................................................1, 2

*Org. for a Better Austin v. Keefe*,
 402 U.S. 415 (1971) ......................................................................................................5

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989) ..........................................................................................3

*Torcivia v. Suffolk Cnty., New York*,
 17 F.4th 342 (2d Cir. 2021) ...........................................................................................8

*Veeco Instruments Inc. v. SGL Carbon, LLC*,
    No. 17-CV-2217 (PKC), 2017 WL 8676438 (E.D.N.Y. Dec. 26, 2017) ....................... 2, 10, 11

**Statutes**

Lanham Act ................................................................................................................................ 10

RICO .......................................................................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 7.1 ..................................................................................................................... 10

Fed. R. Civ. P. 65 ...................................................................................................................... 10

Fed. R. Civ. P. 65(c) ............................................................................................................. 4, 11

U.S. Constitution, First Amendment ................................................................................ *passim*

I.  **INTRODUCTION**

On April 29, 2022, this Court preliminarily enjoined MSCHF from, among other things, "fulfilling orders for . . . . advertising, marketing, promoting, offering to sell, selling, distributing, and/or taking orders for" the Infringing Shoes and required that "Defendant must escrow any funds received" for orders that MSCHF could not reverse or cancel. *See* Decision & Order (Dkt. 40) (the "TRO"), at 17-18. The Court did so after provisionally determining that Vans is likely to succeed on the merits of its trademark infringement claims. *Id.* at 14. Despite waiting three weeks after issuance of the TRO to move the Court for a stay, MSCHF's Motion (Dkt. 47) largely rehashes the same arguments that MSCHF made in opposing Plaintiffs' motion for a preliminary injunction, and that already were rejected in this Court's well-reasoned, 18-page opinion following full briefing and a hearing. MSCHF's ancillary arguments regarding bond and escrow fare no better as these arguments amount to procedurally improper requests for reconsideration, and because they are legally erroneous on the merits, they also fail to justify a stay of the TRO. Because MSCHF fails to carry its burden of showing that the circumstances in this case warrant a discretionary stay, the Court should deny MSCHF's Motion.

II.  **RESPONSE TO MSCHF'S STATEMENT OF FACTS**

Plaintiffs' (collectively, "Vans") position with respect to MSCHF's compliance (or lack thereof) with the Court's TRO is well-documented. *See* Dkt. 42 (Vans' Letter Motion for Contempt); Dkt. 49 (Vans' Reply in Support of the Motion for Contempt). Where appropriate, Vans further responds to MSCHF's Statement of Facts in the arguments presented below.

III.  **ARGUMENT**

    A.  **Each Stay Factor Favors Denying MSCHF's Motion.**

A stay pending appeal is an exercise of judicial discretion, not a matter of right, even if irreparable injury might otherwise result. *See Nken v. Holder*, 556 U.S. 418, 433 (2009). The party

requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. *Id.* at 433-34. To carry this burden, MSCHF is required to: (1) make "a strong showing" that it is likely to succeed on the merits; (2) demonstrate that MSCHF will be irreparably injured absent a stay; (3) establish that issuance of a stay will not substantially injure Vans; and (4) show that a stay is in the public interest. *See Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), 2017 WL 8676438, at *1 (E.D.N.Y. Dec. 26, 2017) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). These factors "mirror the factors governing the issuance of a preliminary injunction," so the "Court [already] considered and addressed most of the arguments…in granting [Vans'] motion for preliminary injunction." *See id.* at *1. Here, the Court previously determined that all four factors weigh in Vans' favor and, as set forth below, the same remains true now.

### i. **MSCHF's Appeal is Destined to Fail.**

The Court's TRO is wholly justified by the record and consistent with applicable law. All four arguments advanced by MSCHF regarding its alleged likelihood of success on appeal fail. Indeed, MSCHF's primary arguments are largely the same as those the Court already considered and rightly rejected in granting Vans' request for a TRO,[1] and the others—regarding bond and escrow—are both procedurally improper and legally erroneous. All told, MSCHF fails to demonstrate any likelihood of success on appeal, much less the "strong showing" required here.

*First*, MSCHF contends that the Court "erred in granting Vans' application for preliminary injunction." Motion at 2. Lacking any good-faith argument that it is likely to succeed on the merits in reversing the Court's TRO, MSCHF instead claims that "this is a close question." *See id.* at 3. But far from a "close question," MSCHF's appeal seeks to uproot over 30-years of Second Circuit precedent. Specifically, it seeks to dramatically expand the test for "expressive" works set forth in

---

[1] *See* Dkt. 12-1 ("Vans' TRO Application").

2

1989 in *Rogers*[2] to directly competing commercial goods—something the Second Circuit has *never* done. This is the same First Amendment argument that the Court already considered and rejected in issuing the TRO, and nothing in the Motion justifies reconsideration of the Court's correct decision. *See* TRO at 3, 11-14.

MSCHF's related argument that this factor favors a stay because "there are 'serious questions' going to the merits of the dispute" also fails. *See* Motion at 2-3. Even if such a "serious question" existed here, it must be accompanied by a clear demonstration of the "balance of hardships tipping decidedly in [MSCHF's] favor" to weigh in favor of a stay. *See Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 33 (2d Cir. 2010). The Court has already correctly determined the opposite: "[t]he balance of the equities weighs *decidedly* in [Vans'] favor." TRO at 16 (emphasis added).

***Second***, MSCHF claims the TRO "causes irreparable harm to MSCHF's First Amendment rights." Motion at 3-4. Setting aside the fact that the Court already considered and rejected these arguments (*see* TRO at 11-14), MSCHF's reliance upon factually and procedurally inapplicable cases undercuts its claim of a First Amendment violation. *See* Section III.A.ii *infra*.

***Third***, MSCHF argues it is likely to succeed on the merits of its appeal because the "Court's escrow order is contrary to law and should be rescinded." Motion at 4-5. This argument goes to an ancillary issue unrelated to the provision MSCHF seeks to stay and, in any event, is founded upon an improper request for reconsideration. Moreover, the escrow requirement in the Court's TRO is legally permissible and fully justified in this case. MSCHF's complaints regarding the Court's escrow requirement are more fully addressed in Section III.B, *infra*.

---

[2] *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).

***Finally***, MSCHF claims it is likely to succeed on the merits of its appeal because the TRO "does not comply with Rule 65(c)." Motion at 5-7. Like MSCHF's complaints regarding the escrow requirement, this too goes to an ancillary issue that is unrelated to the provision MSCHF seeks to stay and is likewise founded upon an improper request for reconsideration. More importantly, MSCHF is flatly mistaken, as its argument is premised on inapplicable case law that this Court has expressly rejected. MSCHF's critiques regarding bond are more fully addressed in Section III.B, *infra*.

### ii. MSCHF Articulates No Actual or Immediate Irreparable Harm.

The Court has already determined that this factor weighs in favor of Vans, not MSCHF (*see* TRO at 14-15), and the Motion fails to articulate any relevant harm MSCHF will face *absent a stay of the TRO*. Fundamentally, MSCHF's claim of irreparable harm fails because it rests on a house of cards that the Court has already toppled: that MSCHF's infringing acts are allegedly protected First Amendment expression. The First Amendment cases relied upon by MSCHF do nothing to advance its claim. Specifically, MSCHF cites three, readily distinguishable cases: *Alexander*,[3] *Organization for a Better Austin*,[4] and *Metropolitan Opera*.[5]

MSCHF relies on *Alexander* to claim that the Court's TRO is a "prior restraint." In doing so, MSCHF purports to quote from the decision for its holding that a "judicial order directing an individual not to engage in expression, on pain of contempt" is "a prior restraint." *See* Motion at 3. The quote presented by MSCHF, however, is not present, in any form, in the case, so the origin (and applicability) of MSCHF's quotation is unclear at best. In any event, *Alexander* is not applicable. Even setting aside that *Alexander* is a criminal case, there, the Supreme Court assessed

---

[3] *See* Motion at 3 (citing *Alexander v. U.S.*, 509 U.S. 544 (1993)).
[4] *See id.* at 3-4 (citing *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)).
[5] *See id.* at 4 (citing *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172 (2d Cir. 2001)).

4

whether a RICO forfeiture provision constituted a prior restraint on speech, finding it was not. *Alexander*, 509 U.S. at 546, 550-51. Specifically, the Supreme Court rejected the petitioner's first amendment defense, finding that the RICO forfeiture provision did not forbid expressive activities and instead merely deprived the petitioner of specific, unlawfully obtained assets. *Id.* at 550-51. To the extent *Alexander* has any applicability to this case, it cuts against MSCHF's argument that the TRO is a prior restraint on speech and supports the Court's escrow requirement.

In *Organization for a Better Austin*, the Supreme Court ruled that the specific injunction at issue—one that prohibited "distribution of literature 'of any kind'" by a community organization—was an impermissible prior restraint. 402 U.S. at 518. This case was specifically directed to the idea that "peaceful pamphleteering is a form of communication protected by the First Amendment." *Id.* at 419. By contrast, the infringing commercial sneakers at issue here are not protected speech, so MSCHF's claim of irreparable harm falls flat. *See* TRO at 11 ("Plaintiffs argue, and the Court agrees, that Plaintiffs are likely to succeed on the merits with respect to Defendant's First Amendment arguments."); *id.* at 13 ("While the manifesto accompanying the shoes may contain protected parodic expression, the Wavy Baby shoes and packaging in and of themselves fail to convey the satirical message.").

In *Metropolitan Opera*, the Second Circuit addressed an injunction that vaguely prohibited a union from making statements. 239 F.3d at 174. Specifically, it was "the vagueness of this injunction" that required it to be vacated, because it "is vague as to what the Union may say and what statements might lead to a finding of contempt of court" and "puts the Union at risk of punishment for good faith efforts to advocate." *Id.* at 178. Importantly, the court reached its conclusion without addressing the First Amendment issues at all. *See id.* at 175-76 ("We agree that the injunction presents serious questions under the First Amendment and libel law, but find it

5

unnecessary to ultimately determine these issues because we hold that the injunction must be vacated as its scope and meaning are unclear."). By contrast, the Court's TRO in this case is clear and specific as to what is prohibited.

More fundamentally, MSCHF's claims of irreparable harm are at odds with its prior representations to the Court, and MSCHF fails to offer any legitimate justification for this sudden about-face. Specifically, MSCHF's instant Motion asks the Court to stay any portion of the TRO that "enjoins MSCHF from promoting [the Infringing Shoes]…on its website, on its mobile app, and in upcoming art exhibitions." Motion at 1. Yet MSCHF previously represented to the Court that the "limited promotional conduct [for the Infringing Shoes] has already ceased" and that it "will distribute no additional [Infringing Shoes] for promotional or any other purposes." Dkt. 21 at 3-4. MSCHF doubled down on this promise at the hearing on Vans' TRO Application, voluntarily representing that MSCHF would cease to "create, market, or advertise" the current iteration of the Infringing Shoes "during the pendency of the litigation." *See* TRO Hearing Transcript (April 27, 2022) at 58 (citing Dkt. 18 (Whaley Declaration)). Yet now, bound by a TRO prohibiting the very things MSCHF represented it would not do, MSCHF claims irreparable harm. This shifting-sands approach strains credulity. Simply put, MSCHF cannot be irreparably harmed by provisions of the TRO that mirror the restrictions MSCHF claimed it would voluntarily impose on itself before the TRO issued.

Finally, MSCHF's claim of future irreparable harm—that it is prohibited from displaying the Infringing Shoes at two exhibitions—has already been presented by MSCHF as a central issue on appeal before the Second Circuit.[6] Because the validity of the TRO will be addressed by the

---

[6] *See, e.g.*, No. 22-1006, Dkt. 14 (Motion to Expedite) at 2 ("This appeal presents an important and time-sensitive First Amendment issue: whether the District Court erred in failing to apply this Court's precedent when the District Court granted the motion for preliminary injunction…that,

6

Second Circuit on an expedited basis prior to either of the exhibitions,[7] MSCHF's claim of future irreparable harm is effectively moot for purposes of this Motion.

### iii. Vans Will Suffer Irreparable Harm if Any Portion of the TRO is Stayed.

As the TRO correctly recognizes, the "[Infringing Shoes] developed by Defendant creates a strong risk of consumer confusion and irreparable harm to the consumer recognition and goodwill cultivated by Plaintiffs." TRO at 15. This remains true today; Vans will be irreparably harmed if any portion of the TRO is stayed.

Importantly, the Court entered the TRO despite "repeated assurances [that MSCHF] will not develop, promote, or advertise [the Infringing Shoes] 'during the pendency of the litigation,'" because the representations "failed to reassure the Court [that] Plaintiffs will be secure from further harm absent injunctive relief." *Id.* (citations omitted). In view of these "repeated assurances," MSCHF's desire now to do precisely the opposite—advertise and promote the Infringing Shoes on its website, mobile application, and at public exhibitions—is particularly concerning to Vans. *See* Motion at 8. MSCHF's sudden change in position further underscores the importance of the TRO, and the Court should decline to stay any portion of it.

### iv. Maintaining the TRO In Its Entirety is In the Public Interest.

Here too, this factor was already correctly decided by the Court: "the public interest also weighs in favor of a preliminary injunction." TRO at 16-17. MSCHF's recycled First Amendment arguments to the contrary should be once more rejected. Indeed, the TRO recognizes that "while the public has an interest in free expression, '[t]he consuming public [also] has a protectable

---

among other things, creates a prior restraint on artistic speech by prohibiting MSCHF's display of art at upcoming art exhibitions.").

[7] *See* No. 22-1006, Dkt. 33 (Order Expediting Appeal) at 1 (ordering completion of briefing by August 2, 2022 and that "[t]he appeal shall be heard as soon as practicable after briefing is completed.").

interest in being free from confusion, deception and mistake[.]'" *Id.* at 16 (citing *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 342 (S.D.N.Y. 2014)). MSCHF's silence on this important consideration—the consuming public's protectable interest in being free from confusion—is telling. *See generally* Motion at 9-10. Despite MSCHF's suggestions to the contrary, the TRO is not a sweeping ban on artistic expression; rather, it protects the consuming public from unnecessary confusion (and prevents further irreparable harm to Vans) caused by specific infringing conduct by MSCHF and its affiliates.

B. **MSCHF's Bond And Escrow Arguments Are Both Procedurally Improper And Legally Erroneous.**

MSCHF could have argued its position on both bond and escrow in the briefing on Vans' TRO Application and at the hearing but chose not to do so. Indeed, both issues were raised and addressed by Vans, without any objection by or response from MSCHF. *See* Vans' TRO Application (Dkt. 12-1) at 29-30 (addressing bond and requesting that the Court "use its discretion to require no bond…or…that any bond be nominal…"); Proposed Order Accompanying Vans' Reply (Dkt. 27-1) at 6 (proposing the very same escrow provision that the Court included in the TRO). Having failed to raise any arguments in opposition or otherwise object to Vans' proposals regarding bond and escrow prior to the issuance of the TRO, MSCHF has waived any challenges on appeal. *See Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1078 (2d Cir. 2021) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."); *see also Torcivia v. Suffolk Cnty., New York*, 17 F.4th 342, 367 (2d Cir. 2021) ("[W]here a party advances arguments available but not pressed below, waiver will bar

raising the issue on appeal."). It follows that MSCHF is highly unlikely to succeed on the merits of its appeal based on these procedurally improper requests for reconsideration.[8]

i. **The TRO's Escrow Requirement Is Fully Justified.**

Despite representing that the "Court's escrow order is contrary to law," MSCHF fails to cite any case, from any district, prohibiting an escrow requirement like that in the TRO. *See* Motion at 4-5. To the contrary, MSCHF's Motion concedes that district courts "maintain the equitable power to [issue a prejudgment asset freeze]…where the plaintiff is pursuing a claim for final equitable relief." *See id.* (citing *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131-33 (2d Cir. 2014)). Here, Vans' Complaint specifically seeks, among other things, "restitution for Defendant's unjust enrichment." *See* Dkt. 1 at 56. Moreover, the Court has "the inherent equitable authority" to issue an asset freeze based on Vans' trademark infringement claim. *See Gucci*, 768 F.3d at 130; Dkt. 1 (Complaint), ¶¶ 124-144, 156-164. This Second Circuit precedent confirms the Court's broad discretion to freeze MSCHF's assets. Yet rather than imposing a freeze on all of MSCHF's assets, the Court's TRO only requires that MSCHF escrow funds received "for the Prohibited Shoes," and only for orders "that cannot be reversed and/or cancelled." TRO at 17-18. This narrowly-tailored asset freeze is directly tied to MSCHF's infringing activity, and requires, at most, escrow of MSCHF's revenue for infringing goods—revenue to which Vans is entitled when it succeeds on its trademark infringement and unjust enrichment claims (among others).

Likewise unavailing is MSCHF's proclamation, without citation to any authority, that an escrow order "is appropriate only where the court has found that the defendant likely would be

---

[8] To the extent that MSCHF's Motion is interpreted as asking the Court to modify the TRO by imposing a bond requirement and vacating the escrow provision, MSCHF's requests should be denied for the reasons that follow.

9

unable to satisfy a judgment, which is not the case here."[9] Motion at 5. In fact, this claim is directly contradicted by the *Gucci* case cited by MSCHF itself. *See id.* (citing *Gucci*, 768 F.3d 122); *see also Gucci*, 768 F.3d at 132-33 (permitting an asset freeze in a Lanham Act case after noting that "all three of our sister circuits to have considered the issue have unanimously held that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases").

MSCHF's complaints regarding how the required escrow might be used—to "return those funds to customers"—also fails. As noted above, the Court has broad discretion to order an escrow and to determine the appropriate escrow amount. MSCHF's argument to the contrary is unsupported by legal precedent and should be disregarded.

    ii. **The Court Was Not Required to Expressly Address Bond in the TRO.**

This Court's decision in *Veeco* lays to rest MSCHF's arguments regarding an alleged violation of Fed. R. Civ. P. 65. There, Judge Chen explains in great detail why the Second Circuit's *Clarkson*[10] decision is "the governing authority," expressly rejecting arguments based upon the *Corning*[11] case now relied upon by MSCHF. *See Veeco*, 2017 WL 8676438, at *7 (explaining why *Clarkson*—a unanimous decision by a three-judge panel—is still binding law in the Second Circuit despite the intermediate decision in *Corning*—a *per curium* opinion by a two-judge panel). Under *Clarkson*, a district court has the authority "to issue the PI Order without requiring or

---

[9] Notably, while MSCHF asks the Court and Vans to take at face value its claim that inability to satisfy a judgment "is not the case here," MSCHF still has not filed the required corporate disclosure statement—a requirement eight weeks delinquent—that would shed light on MSCHF's finances and ability to satisfy a judgment. *See* Fed. R. Civ. P. 7.1. MSCHF's efforts to be free from this Court's escrow requirement is all the more concerning in view of MSCHF's history of failing to file corporate disclosure statements in prior litigation. *See, e.g.*, *Nike, Inc. v. MSCHF Product Studio, Inc.*, No. 1:21-cv-01679-EK-PK (E.D.N.Y.).
[10] *Clarkson Co. v. Shaheen*, 544 F.2d 624 (2d Cir. 1976).
[11] *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156 (2d Cir. 2004).

explicitly addressing the need for a security bond" where the enjoined party "did not request a bond at the time that the Court was considering [the] PI motion." *Id.*; *see also Clarkson*, 544 F.2d at 632. Such is the case here. Despite Vans' argument in its moving papers that no or minimal bond should be required, MSCHF did not respond to that argument or otherwise request security in its Opposition (Dkt. 13), in its Supplemental Opposition (Dkt. 21), or during the hearing. Because MSCHF failed to "request a bond at the time that the Court was considering [the] PI motion," the Court was not required to address Fed. R. Civ. P. 65(c) in the TRO. *See Veeco*, 2017 WL 8676438, at *7; *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996); *Clarkson*, 544 F.2d at 632.

### iii. MSCHF Fails to Satisfy its Burden of Proof as to the Allegedly Appropriate Security.

Even if the Court were to reevaluate whether security is appropriate in this case, MSCHF's Motion falls far short of demonstrating any quantifiable measure of its alleged costs and damages. In fact, after claiming that "the [alleged] economic harm to MSCHF is difficult to calculate," MSCHF concedes that it only "has incurred minor expenses in modifying its website and app, as well as monitoring compliance with the injunction." Motion at 6. Neither "minor expense" justifies posting security in this case. The former—website and mobile application modifications—would be incurred by MSCHF irrespective of the TRO and, in fact, was largely incurred before the TRO issued in the first instance.[12] The latter—compliance monitoring—is

---

[12] *See* Dkt. 18 (Whaley Declaration), ¶¶ 26-27, (explaining that it is MSCHF's company policy to update its website, social media, and mobile applications in anticipation of each new "drop"); *see also* Dkt. 22 (Supplemental Whaley Declaration), ¶ 40 (explaining that MSCHF had already "moved on to announce its next bi-weekly work" and that its new sneaker "has now moved into the prime spot on MSCHF Sneaker's mobile app and website," meaning the "*Wavy Baby* has been archived."); *id.*, ¶ 44 ("In addition, our limited social media posts (the one that has appeared on Instagram and the one that has appeared on Twitter) will be removed when we announce our next shoe drop."); *see also* Dkt. 21 at 3-4 (representing that the "limited promotional conduct [for the

inherently required by every TRO and thus cannot alone justify imposing a security requirement; otherwise, the Court could *never* waive security. MSCHF ultimately admits that its "primary harm" is allegedly irreparable. *See* Motion at 6-7 (arguing that there "is no amount of security that can compensate MSCHF for [its] harm."). Of course, this is not the type of alleged harm that security is intended to, or could possibly, address. And MSCHF's failure (again) to specify the amount of security this Court should allegedly require is fatal to its argument. *See CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 163 (E.D.N.Y. 2011) ("…a court is not required to order security in respect of claimed economic damages that are no more than speculative…the burden is on the party seeking security to establish a rational basis for the amount of the proposed bond.") (citing *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006), *aff'd*, 246 F. App'x 73 (2d Cir. 2007). Because the burden of proof lies with MSCHF, its failure to demonstrate any quantifiable harm is yet another basis to reject MSCHF's belated plea for security.

### iv. Bond and Escrow Are Ancillary Issues With No Relation To The Enjoined Conduct Sought To Be Stayed.

Even if MSCHF's belated arguments regarding bond and escrow were entertained, they should not disturb the core prohibitions set forth in the TRO—including that for which MSCHF now seeks a stay. At the very most, the Court has discretion to reconsider whether, and the extent to which, adjustments to the escrow provision and imposition of a security requirement are justified in this case (they are not). The Court is able to do this without disturbing the restrictions set forth in the preliminary injunction.

---

Infringing Shoes] has already ceased" and that it "will distribute no additional [Infringing Shoes] for promotional or any other purposes.").

## IV. CONCLUSION

For the reasons set forth above, as well as those in Vans' briefing and argument on its application for temporary restraining order and preliminary injunction, and in the Court's TRO, MSCHF's Motion should be denied.

Dated: June 10, 2022

Respectfully submitted,

**MCGUIREWOODS LLP**

*/s/ Tanya L. Greene*
Tanya L. Greene (*pro hac vice*)
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071
Tel: (213) 457-9879
Fax: (213) 547-9899
tgreene@mcguirewoods.com

Philip A. Goldstein
Michael L. Simes
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel: (212) 548-2100
Fax: (212) 548-2150
pagoldstein@mcguirewoods.com
msimes@mcguirewoods.com

Lucy J. Wheatley (*pro hac vice*)
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 698-2016
lwheatley@mcguirewoods.com

Matthew W. Cornelia (*pro hac vice*)
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
Tel: (214) (32-6400
Fax: (214) 932-6499
mcornelia@mcguirewoods.com

*Counsel for Plaintiffs*
*Vans, Inc. and VF Outdoor, LLC*